8 November 2000

No. 2--99--0590

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Winnebago County.

)

Plaintiff-Appellee, )

) Nos. 98--CF--93

                                )       98--CM--302

v. )

)

HUGO C. PENA, ) Honorable

) Michael R. Morrison,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

JUSTICE INGLIS delivered the opinion of the court:

Following a jury trial, defendant, Hugo C. Pena, was found guilty of home invasion (720 ILCS 5/12–11(a) (West 1998)), armed robbery (720 ILCS 5/18–2(a) (West 1998)), unlawful use of a weapon by a felon (720 ILCS 5/24–1.1 (West 1998)), and resisting or obstructing a peace officer (720 ILCS 5/31–1(a) (West 1998)).  Defendant appeals and contends (1) that he is entitled to the reversal of his convictions of armed robbery and home invasion because the State failed to prove him guilty beyond a reasonable doubt of those offenses as a principal and because he could not be convicted of those offenses as an accomplice due to the omission of language regarding accountability in certain jury instructions; and (2) that his conviction of unlawful use of a weapon by a felon must be reversed because it violates the one-act, one-crime rule.  We affirm.

In case No. 98--CF--93, the State charged defendant by indictment with one count each of home invasion, armed robbery, and unlawful use of a weapon by a felon.  In case No. 98--CM--302, the State charged defendant by complaint with resisting or obstructing a peace officer.  The four charges were tried simultaneously.

At trial, Saul Camacho testified that on the evening of January 9, 1998, he was at home with his four children in his residence, a single-family house.  At about 10 p.m., Camacho heard a knock on the front door.  Camacho went to the front door and looked through the peephole but could not discern who was there.  Camacho opened the door and saw a man whom he did not know.  Camacho later identified the man as defendant.  Defendant asked for Jose.  Camacho told defendant that there was no Jose in his house.  Camacho testified that defendant then pulled a gun and forced his way into Camacho's house.  Camacho did not invite defendant into his house.

Camacho further testified that, after defendant entered his house, defendant pointed the gun at Camacho, took Camacho into the kitchen, opened the back door of Camacho's house, and let four or five other persons into Camacho's house.  These persons, who had been waiting on the back porch, wore masks.  The intruders made Camacho lie on the kitchen floor and asked Camacho where the drugs were.  Camacho replied that he did not have any drugs.  One of the intruders then hit Camacho on the head with an object.  The blow caused a cut on Camacho's head.  Camacho did not know which of the intruders hit him or what he was hit with.  While at least one of the intruders stayed with Camacho and pointed a gun at him, other intruders went into a first-floor bedroom and ransacked it while looking for drugs.  The intruders did not find drugs in the bedroom.  Camacho testified that during these events he believed that his children, who were ages 15, 14, 12, and 5, were somewhere upstairs in the house.  However, Camacho did not know exactly where the children were.

Camacho further testified that after the intruders ransacked the first-floor bedroom they took him down to the basement of his house.  The intruders made Camacho kneel down on the basement floor and continued looking for drugs.  One of the masked intruders pointed a gun at Camacho.  The intruders also brought Camacho's 14-

year-old daughter, Anna, down into the basement and made her kneel next to Camacho.  Camacho feared that the intruders might use their guns.  At that point, Camacho heard a shout and the intruders suddenly ran out of Camacho's house.  Camacho testified that the intruders took his wallet from his house.  The wallet contained less than $100.

Camacho further testified that shortly after the intruders ran out of his house the police arrived.  Later the same evening, the police asked Camacho to look at three men.  Camacho identified one of the men as the man who forced his way into Camacho's house.  The man that Camacho identified was defendant.

As People's exhibit No. 1, the State introduced a wallet into evidence.  Camacho identified People's exhibit No. 1 as the wallet that the intruders took from his house.  The wallet contained Camacho's driver's license.  Camacho testified that the wallet no longer contained the money that it had contained when the intruders took it.

As People's exhibit No. 2, the State introduced a silvery handgun into evidence.  Camacho testified that the police showed him a similar gun on the night of the intrusion.  Camacho recalled that the gun that the police showed him looked a lot like the gun that defendant had when he forced his way into Camacho's house.

On cross-examination, Camacho acknowledged that there was no mention of his wallet in a police report that was made after the incident. Camacho testified that it was not possible that he had dropped his wallet outside his house or left his wallet outside in his car on the night of the intrusion.  Camacho was sure of that because he had paid bills on the day of the intrusion and recalled counting the money in his wallet on that night.  Camacho testified that when the wallet was taken it contained United States currency totaling $70 in $20, $10, and $1 bill denominations.

On redirect examination, Camacho reiterated that he did not lose his wallet.  Camacho believed that the wallet was on a table in his house when defendant forced his way into the house.

Jason Bailey, a Rockford police officer, testified that at about 10:30 p.m. on January 9, 1998, he was dispatched to Camacho's house in response to a "911 hangup."  When he arrived at the house, Bailey observed that two other police officers, Officers Clark and Cebuhar, had apprehended three suspects.  Bailey then went into Camacho's house and observed "a considerable amount of blood on the floor" and that Camacho was bleeding from the head.  Later, Bailey went out the back door of the house and followed several sets of footprints in fresh snow.  About 45 yards northeast of the house, Bailey found a black and silver Smith and Wesson handgun lying in the snow about two feet away from the sets of footprints.  According to Bailey, when he found the gun it appeared as if it had only recently fallen into the snow.  Bailey identified People's exhibit No. 2 as the gun he found in the snow.

On cross-examination, Bailey testified that the blood he observed inside Camacho's house was in the kitchen.  Bailey agreed that there were a number of drops of blood but there was no "running or streaming" blood.  Bailey identified People's exhibit No. 4 as a magazine that was inside the gun when he found it and People's exhibit No. 5 as ammunition that was in the gun when he found it.

Michael Clark, a Rockford police officer, testified that he was dispatched to Camacho's house on the night of the intrusion.  When Clark arrived at Camacho's house, another police officer, Officer Cebuhar, was there.  Clark and Cebuhar were in the front of the house when they heard a noise and started walking to the back of the house.  Clark then observed five persons come out of the back door of the house.  Clark identified himself as a police officer and ordered the persons to stop.  The persons did not stop; instead, they took off running in a northeasterly direction.  Clark and Cebuhar chased the persons and continued to yell for them to stop.  Clark and Cebuhar caught up with three of the persons about a block from Camacho's house.  The other two persons took off running in different directions and got away.  Clark testified that from the time the three persons he and Cebuhar caught up with left Camacho's house until they were caught he never lost sight of them.

Clark further testified that when he and Cebuhar caught up with the three persons, Cebuhar drew his gun and told the three persons to get down on the ground.  Two of the persons complied.  The third person, whom Clark identified as defendant, did not comply.  Rather, defendant remained standing and turning around, leading Clark to conclude that defendant might take off running again.  Defendant got down on the ground only after Clark took defendant to the ground.

After defendant was on the ground, Clark handcuffed defendant and went through defendant's pockets looking for identification.  Clark testified that he found a wallet in defendant's rear pocket.  Clark looked in the wallet and saw that it contained a driver's license and other picture identifications that did not match defendant.  Clark identified People's exhibit No. 1 as the wallet that was in defendant's rear pocket.  Clark testified that $114 in cash was found on one of the other three persons that he and Cebuhar caught.  The cash consisted of "four $20's and one $10, three $5's and nine $1's."

Jason Cebuhar, a Rockford police officer, was also dispatched to Camacho's house on the night of January 9, 1998.  Cebuhar's testimony at trial was consistent with and corroborated Clark's testimony.

The parties stipulated that defendant had been convicted of a felony offense in Illinois on December 27, 1994.  The State then rested.  Without presenting any evidence, defendant then rested.

The jury found defendant guilty of all four charges.  After denying defendant's motion for a new trial or to set aside the verdicts, the trial court sentenced defendant to concurrent terms of incarceration of 20 years for the offense of home invasion, 20 years for the offense of armed robbery, 3 years for the offense of unlawful use of a weapon by a felon, and 30 days for the offense of  resisting or obstructing a peace officer.  After the trial court denied his motion to reconsider the sentences, defendant filed a timely notice of appeal.

On appeal, defendant first contends that his convictions of armed robbery and home invasion must be reversed because the State failed to prove him guilty beyond a reasonable doubt of these offenses as a principal and because he could not properly be found guilty as an accomplice due to instructional errors.  Defendant asserts that the State failed to include recommended language regarding accountability in each of the pattern jury instructions for these offenses that set out the propositions that the State was required to prove.  Defendant maintains that this resulted in the jury being instructed on his culpability only as a principal and not as an accomplice.  Defendant argues that because of these instructional errors it was improper for the jury to find him guilty of these offenses as an accomplice.  We first address the alleged instructional error regarding the armed robbery charge.

We note initially that the State argues that defendant waived the issue of instructional error by failing to object to the instructions that were given.  However, defendant's contentions raise claims of substantial defects in jury instructions.  In such cases, the waiver rule may be relaxed even where a defendant has failed to make timely objections.  See 177 Ill. 2d R. 451(c); 
People v. Ward
, 187 Ill. 2d 249, 264-65 (1999).

The jury instruction in question with respect to the armed robbery conviction was People's instruction No. 15, which stated:

"To sustain the charge of armed robbery, the State must prove the following propositions:

First proposition: That the defendant intentionally took property from the person or presence of Saul 
Camacho; and

Second proposition: That the defendant did so by the use of force or by threatening the imminent use of force; and

Third proposition: That the defendant carried on or about his person a dangerous weapon or was otherwise armed with a dangerous weapon at the time of the taking.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

This instruction tracks the language of Illinois Pattern Jury Instructions, Criminal, No. 14.06 (4th ed. 2000) (IPI Criminal 4th).  As defendant points out, the committee note for this pattern instruction states, in part:

"When accountability is an issue, ordinarily insert the phrase 'or one for whose conduct he is legally responsible' after the word 'defendant' in each proposition."  IPI Criminal 4th No. 14.06, Committee Note, at 206.

Defendant asserts that because accountability was an issue in this case it was error for the State to tender People's instruction No. 15 without the accountability phrase recommended in the committee note.  Defendant argues that without the accountability phrase the jury could not properly convict him as an accomplice.

Defendant's argument ignores the fact that the jury was instructed regarding accountability by another instruction, People's instruction No. 11., which stated:

"A person is legally responsible for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of an offense, he knowingly solicits, aids, abets, agrees to aid or attempts to aid the other person in the planning or commission of an offense.

The word 'conduct' includes any criminal act done in furtherance of the planned and intended act."  

See IPI Criminal 4th No. 5.03.

The purpose of instructions is to guide the jury in its deliberations and to help it reach a proper verdict through the application of legal principles as applied to the evidence and the law.  
People v. Hester
, 131 Ill. 2d 91, 98 (1989).  Jury instructions should not be read in isolation but should be construed as a whole.  
Ward
, 187 Ill. 2d at 265.

In this case, defendant essentially asks us to read People's instruction No. 15 in isolation.  However, People's instruction No. 11 unambiguously sets out a principle of accountability.  In addition, the jury was instructed by People's instruction No. 1 that "[t]he law that applies to this case is stated in these instructions, and it is your duty to follow all of them.  You must not single out certain instructions and disregard others."  Thus,  assuming 
arguendo
 that People's instruction No. 15, when read in isolation, was defective because it omitted the accountability phrase, we believe the instructions as a whole ameliorated any defect stemming from the omission of the accountability phrase.  Therefore, when the instructions are read as a whole, as they should be, the jury could have properly found defendant guilty of armed robbery as an accomplice.

Furthermore, even if any error in People's instruction No. 15 had not been ameliorated by other instructions, defendant is not entitled to the reversal of his armed robbery conviction because the evidence was sufficient to prove him guilty beyond a reasonable doubt as a principal.  A jury instruction that was defective with respect to accountability does not constitute reversible error where sufficient evidence was adduced from which the jury could find a defendant guilty as a principal.  
People v. Jefferson
, 227 Ill. App. 3d 491, 496 (1992).

When evaluating the sufficiency of the evidence, a reviewing court is to determine, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  
People v. Collins
, 106 Ill. 2d 237, 261 (1985).  We will not substitute our judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses and will not reverse a criminal conviction unless the evidence is so unreasonable, improbable, or so unsatisfactory as to justify a reasonable doubt regarding the defendant's guilt.  
Collins
, 106 Ill. 2d at 261-62.

In this case, sufficient evidence was adduced from which the jury could have found defendant guilty of armed robbery as a principal.  The evidence showed that defendant was armed with a gun when he entered Camacho's house.  In the house, defendant pointed the gun at Camacho.  While defendant was in the house, Camacho's wallet was taken from inside the house.  When the police apprehended defendant, he had Camacho's wallet in his possession.  Based on these facts, the jury could reasonably infer that defendant took the wallet from Camacho's presence while threatening Camacho with the gun.  This was sufficient to prove defendant's guilt of armed robbery beyond a reasonable doubt as a principal.

Finally, any error in People's instruction No. 15 was harmless.  Instructional errors are reviewed under a harmless error analysis.  
People v. Dennis
, 181 Ill. 2d 87, 95 (1998).  Under this analysis, an error in a jury instruction is deemed harmless where the result of the trial would not have been different if a proper jury instruction had been given.  
People v. Johnson
, 146 Ill. 2d 109, 137 (1991).

In this case, the State argued defendant's guilt based on an accountability theory and included an accountability instruction in the jury instructions as People's instruction No. 11.  The evidence of defendant's guilt as an accomplice was overwhelming.  The addition of the accountability phrase in People's instruction No. 15 would only have reinforced the accountability instruction that was given to the jury.  Based on this record, we conclude that the result of the trial would not have been different if the accountability phrase had been included in People’s instruction No. 15.  Therefore, to the extent that People's instruction No. 15 was defective, the error was harmless.

For all these reasons, we conclude that defendant has failed to show that he is entitled to the reversal of his conviction of armed robbery on the ground of instructional error.

We now turn to defendant's contention that his conviction of home invasion must be reversed because of an instructional error.  As he did with respect to his conviction of armed robbery, defendant again argues that because of an instructional error the jury could not convict him of home invasion as an accomplice.  Defendant also asserts that he was not proved guilty beyond a reasonable doubt of home invasion as a principal.

The instruction that defendant claims was defective with respect to the home invasion charge was People's instruction No. 13.  That instruction tracked the language of IPI Criminal 4th No. 11.54, which sets out the propositions that the State must prove to sustain the charge of home invasion.  See IPI Criminal 4th No. 11.54.  The related committee note is identical to the committee note in IPI Criminal 4th No. 14.06 (the instruction regarding armed robbery) with respect to the insertion of an accountability phrase in the instruction when accountability is an issue.  IPI Criminal 4th No. 11.54, Committee Note, at 534.  Our analysis of defendant's contention that his conviction of home invasion must be reversed due to an instructional error is therefore directly parallel to our analysis of the alleged instructional error related to defendant's armed robbery conviction.

We agree with defendant that when read in isolation People's instruction No. 13, without the accountability phrase, is arguably defective because accountability was an issue in this case.  However, we again note, as we did in our analysis of the armed robbery instruction, that People's instruction No. 11 was given to the jury and instructed the jury as to accountability.  As with the armed robbery instruction, the jury could and should have read People's instruction No. 11 in conjunction with People's instruction No. 13.  As with the armed robbery instruction, we believe that reading People's instruction No. 13 in conjunction with People's instruction No. 11 ameliorated any error in People's instruction No. 13 that stemmed from the failure to include the accountability phrase in People's instruction No. 13.  Therefore, based on the instructions the jury was given, the jury could have properly convicted defendant of home invasion as an accomplice.

Unlike the armed robbery, we agree with defendant that the evidence was not sufficient to prove him guilty of home invasion beyond a reasonable doubt as a principal.  However, like the armed robbery, even assuming that People's instruction No. 13 was defective and that People's instruction No. 11 did not ameliorate the defect, any error was harmless.

The evidence of defendant’s guilt of home invasion as an accomplice was overwhelming.  The uncontroverted evidence showed that defendant, who was not a police officer acting in the line of duty, knowingly entered Camacho's dwelling place without authority, knew Camacho was present, and was armed with a handgun. In addition, defendant, or one of his accomplices, used force on Camacho by striking Camacho in the head causing him to suffer a laceration.

As with the armed robbery, the State argued defendant's guilt of home invasion based on an accountability theory and included an accountability instruction in the jury instructions as People's instruction No. 11.  The addition of the accountability phrase in People's instruction No. 13 would have merely reinforced the accountability instruction that was given to the jury.  Based on this record, we conclude that the result of the trial would not have been different if the accountability phrase had been included in People’s instruction No. 13.  Therefore, to the extent that People's instruction No. 13 was defective, the error was harmless.

For these reasons, we conclude that defendant has failed to show that he is entitled to the reversal of his conviction of home invasion on the ground of instructional error.

Defendant next contends that we must reverse his conviction of unlawful use of a weapon by a felon because the conviction violated the one-act, one-crime rule.  Defendant posits that a single act, his possession of a gun, was a common element of both the charge of home invasion and the charge of unlawful use of a weapon by a felon.  Defendant argues that conviction of both offenses would therefore violate the one-act, one-crime rule.

Our supreme court announced the one-act, one-crime rule in 
People v. King
, 66 Ill. 2d 551 (1977), when it stated:

"Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act.  Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses.  Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts.  'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense.  We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered."  
King
, 66 Ill. 2d at 566.

In 
People v. Rodriguez
, 169 Ill. 2d 183 (1996), the court reaffirmed and clarified the one-act, one-crime rule.  
The court reiterated the definition of "act" set out in 
King
 and stated that a person can be guilty of multiple offenses even if a common act is part of the offenses.  
Rodriguez
, 169 Ill. 2d at 188.  The one-act, one-crime rule is applied in two steps.  First, a court determines whether a defendant’s conduct consisted of a single act or separate acts.  If there was only one act, multiple convictions arising out of the single act are improper.  If there was more than one act, the court next determines whether any of the offenses arising from the act are lesser included offenses.  A conviction is improper for a lesser included offense.  
Rodriguez
, 169 Ill. 2d at 186.

In this case, to support his contention that the one-act, one-

crime rule was violated, defendant relies primarily on 
People v. Williams
, 302 Ill. App. 3d 975 (1999).  In 
Williams
, the defendant was a passenger in a car that was stopped for a traffic violation.  The defendant was arrested pursuant to an outstanding warrant.  A subsequent search of the car seat where the defendant had been sitting revealed a gun and drugs that had been stuffed between the seat and the backrest.  The defendant was convicted of armed violence based on possession of a controlled substance and unlawful possession of a weapon by a felon and was sentenced on both convictions.  The defendant appealed and contended that his convictions violated the one-act, one-crime rule.  
Williams
, 302 Ill. App. 3d at 976-77.  This court determined that the conduct giving rise to the multiple offenses was one act and reversed the defendant’s conviction of unlawful possession of a weapon by a felon on the ground that the conviction violated the one-act, one-

crime rule.  
Williams
, 302 Ill. App. 3d at 978.

In 
People v. White
, 311 Ill. App. 3d 374 (2000), the defendant, like the defendant in 
Williams
, was convicted
 of both armed violence based on the illegal possession of drugs and unlawful possession of a weapon by a felon.  The defendant in 
White
  relied on 
Williams
 and argued that his convictions violated the one-act, one-crime rule.  The Fourth District concluded that 
Williams
 was wrongly decided and declined to follow it.  
The court concluded that although the defendant’s possession of the gun was common to both offenses, and although the defendant may have possessed the gun and the drugs close in time, or even simultaneously, nonetheless the possession of the gun and the possession of the drugs were separate acts.  
White
, 311 Ill. App. 3d at 385-86.  In explaining its conclusion, the 
White
 court stated:

"Although both offenses shared the common act of possession of a weapon, armed violence required the additional act of possession of the drugs, and unlawful possession of a weapon by a felon required the additional element of status as a felon.  Accordingly, the two offenses did not result from precisely the same physical act."  
White
, 311 Ill. App. 3d at 386.

We believe that this case is more similar to 
White
 than it is to 
Williams
.  Here, both the offenses of home invasion and unlawful use of a weapon by a felon shared the common act of possession of a weapon.  However, in committing the offense of home invasion defendant engaged in the additional acts of entering a dwelling place he knew was occupied while armed with a gun.  In addition, while in the dwelling place, defendant or one of his accomplices used force on an occupant of the dwelling.  In committing the offense of unlawful use of a weapon, defendant was required to have and did have the status of being a felon.  Based on this record, we  conclude that defendant's conduct in committing
 the two offenses did not consist of a single act.

To complete our analysis of whether the one-act, one-crime rule was violated, we next determine whether either offense was an included offense of the other.  Our supreme court has adopted the charging instrument approach in determining whether offenses are included offenses.  
People v. Novak
, 163 Ill. 2d 93, 112-13 (1994).  Under this approach, an offense is deemed an included offense only if the instrument charging the greater offense sets out, at a minimum, the main outline of the included offense.  
People v. McLaurin
, 184 Ill. 2d 58, 104-05 (1998).

In this case, the indictment charging the offense of home invasion stated, in relevant part, that defendant and his codefendants:

"committed the offense of Home Invasion, in that each defendant, not a peace officer acting in the line of duty, knowingly and without authority entered the dwelling place of Saul Camacho *** having reason to know Saul Camacho to be present within the dwelling, and while armed with a dangerous weapon, a handgun, used force upon Saul Camacho within that dwelling place, in that the defendants struck Saul Camacho in the head causing him to suffer a laceration."

The indictment charging defendant with the offense of unlawful use of a weapon by a felon stated that defendant:

"committed the offense of Unlawful Use of Weapons by a Felon, in that defendant, a person who has been convicted of a felony, aggravated battery in Boone County, under the law of Illinois, knowingly possessed on or about his person, a handgun."

The charging instrument for the offense of home invasion does not set out anything regarding defendant's status as a convicted felon.  The status of convicted felon is an essential element of the charge of unlawful use of a weapon by a felon.  Therefore, the charging instrument for the home invasion offense does not set out the main outline of the charge of unlawful use of a weapon by a felon.  Accordingly, based on the charging instruments, the offense of unlawful use of a weapon by a felon is not an included offense of home invasion.  Based on the charging instruments, home invasion clearly was not an included offense of unlawful use of a weapon by a felon.

For these reasons, we conclude that defendant has failed to show that he is entitled to the reversal of his conviction of unlawful use of a weapon by a felon on the ground that the conviction violated the one-act, one-crime rule.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

RAPP and GALASSO, JJ., concur.