SIXTH DIVISION

August 29, 2003    

No. 1-01-1988

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

BRISCOE WATSON,

Defendant-Appellant.

)))))))))

Appeal from the

Circuit Court of

Cook County

Honorable

Mary Maxwell Thomas,

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

Following a jury trial, defendant Briscoe Watson was convicted of aggravated criminal sexual assault and aggravated kidnaping and was sentenced to 10 years in prison for each offense, with those terms to be served concurrently.  On appeal, defendant contends that in closing argument, the prosecution made several prejudicial statements that denied him the right to a fair trial.  Defendant also asserts that an omission in the jury instruction that listed the elements of aggravated criminal sexual assault constituted reversible error.  For all of the reasons that follow, we affirm defendant’s convictions.  In addition, we vacate defendant’s concurrent sentences and remand this case to the trial court for the imposition of consecutive sentences.    

Defendant was convicted on an accountability theory of the aggravated criminal sexual assault of L.E.  The State presented testimony that on December 2, 1998, defendant and Lawrence McIntosh threatened L.E. with a gun and forcibly took her to defendant’s apartment.  There, McIntosh sexually assaulted L.E. while defendant watched.
(footnote: 1)  

At trial, the jury heard the following relevant testimony.  L.E. testified that on the date of the offense, she was 14 years old and had known defendant and McIntosh for a couple of months but was not dating either of them.  Defendant called her and asked if she wanted to get something to eat.  Defendant sent McIntosh to pick up L.E. at her mother’s house.  

McIntosh bought food for L.E. and took her to defendant’s apartment building.  L.E. said she then asked to be taken home, but McIntosh tried to pull her out of the car and “asked [her] to go upstairs.”  As McIntosh pulled L.E. out of the car, defendant arrived in his car.  Defendant approached L.E. and McIntosh and was holding a gun.  Defendant told L.E. that if she did not get out of the car, he would shoot her.  McIntosh told L.E. to “get the f— out of the car” and pulled her up the stairs and into defendant’s apartment.  Defendant held the apartment door open as they entered and locked the door behind them.  

McIntosh pulled L.E. into a bedroom, pushed her onto a bed, forced her to undress and raped her.  During this time, L.E. heard defendant laughing.  L.E. testified that defendant was standing near the bedroom door and that McIntosh had thrown her pants on the bedroom floor about two feet from the door.  Forensic testimony established that a semen stain on L.E.’s pants matched defendant’s DNA profile and that her underwear contained a semen stain that did not match defendant’s or McIntosh’s DNA profile.

On appeal, defendant first contends that the prosecution made several remarks in closing argument that prejudiced his right to a fair trial: (1) stating that defendant was “pleasuring himself” during the assault; (2) mentioning a third DNA profile as to the semen stains on L.E.’s underwear; and (3) suggesting that defendant tried to “camouflage” the proceedings.  

Initially, we note that although defendant made contemporaneous objections to those comments, he failed to raise the issues in his posttrial motion, thus forfeiting the issues for purposes of our review.  See 
People v.
 Enoch
, 122 
Ill. 2d
 176, 186, 522 
N.E.2d 
1124, 1130 (1988);
 
People v.
 Williams
, 313 
Ill. App. 3d
 849, 863, 730 
N.E.2d 
561, 573 (2000).  This court can consider forfeited issues under the plain error doctrine when the evidence is closely balanced and the remarks are so prejudicial as to deny the defendant a fair trial.  
Williams
, 313 
Ill. App. 3d
 at 863, 730 
N.E.2d
 at 573.  However, we do not find either circumstance applies here.  The comments in this case were not improper and do not constitute reversible error.  

A prosecutor is allowed a great deal of latitude in closing argument, and he or she may speak unfavorably of the accused, comment on the evidence presented and make reasonable inferences arising therefrom, even if those inferences are unfavorable to the defendant.  
People v.
 Bennett
, 304 
Ill. App. 3d
 69, 71-72, 710 
N.E.2d 
445, 447 (1999); 
People v.
 Rush
, 294 
Ill. App. 3d
 334, 340-41, 689 
N.E.2d 
669, 674 (1998).  Regarding the prosecutor’s assertion that defendant was “pleasuring himself” during McIntosh’s assault of L.E., that statement was  supported by testimony that a semen stain matching defendant’s DNA profile was found on L.E.’s pants.  The prosecutor’s remark is also consistent with L.E.’s testimony that defendant was standing near the bedroom door laughing during the assault and that her pants were about two feet from the doorway.  Given that testimony, we find that the prosecutor’s comment was supported by the evidence.  Moreover, despite defendant’s assertion that the prosecutor’s remark was “material to his conviction,” whether or not defendant engaged in such activity would not have been a decisive factor in his conviction because he was charged with L.E.’s sexual assault on an accountability theory based on the actions of McIntosh.  

Turning to the two other statements of which defendant complains, each of those remarks was made in the State’s rebuttal to defense counsel’s closing argument.  In reviewing allegations of prosecutorial misconduct, the closing arguments of both parties must be examined in their entirety and the remarks made must be placed in their proper context.  
Rush
, 294 
Ill. App. 3d
 at 340, 689 
N.E.2d 
at 674.
  
In closing argument, defendant’s counsel referred to testimony that L.E.’s underwear contained a semen stain that did not match the DNA profile of defendant or McIntosh.  Defendant’s attorney called the jury’s attention to the source of that semen, stating: 

“Who put it there?  How did it get there?  Under what circumstances?  Did it relate to this situation or event, which [L.E.] now complains of?  Is there somebody whose identity she perhaps does not wish to disclose?”

In addition, defendant’s attorney referred to those queries as “important, unanswered questions” that the jury should consider and answer.  

Defendant now contends that the prosecutor misstated the evidence by remarking in rebuttal closing argument that the “third [DNA] profile, the semen in those panties, as the court instructed you, is not at issue.”  Where the complained-of comments are part of a prosecutor’s rebuttal argument, the statements will not be deemed improper if they were invited by defense counsel’s closing argument.  
Williams
, 313 
Ill. App. 3d
 at 863, 730 
N.E.2d 
at 573.
  
Considering the remarks in their entirety, we find that the prosecutor’s comments were made in response to defense counsel’s attempt to focus the jury’s attention on a third party.    
  

Defendant also contends that the prior sexual conduct of L.E. and the 
presence of unidentified semen in her underwear are relevant issues that relate directly to his guilt or innocence.  First, it is necessary to point out, as the prosecution did in its rebuttal closing argument, that L.E.’s prior sexual activity is generally inadmissible and not relevant.  See 
People v.
 Sandoval
, 135 
Ill. 2d
 159, 552 
N.E.2d 
726 (1990).  Second, the fact that her underwear contained semen from a third party does not negate the evidence that McIntosh sexually assaulted her.
(footnote: 2)  Therefore, the State’s comments were not in error.

Defendant next asserts that the prosecutor improperly accused him of  “camouflage.”  Defense counsel objected to the following remarks in the State’s rebuttal closing argument:

“The easiest thing in this type of case is to make the defendant 

– excuse me – make the victim defend her actions.  That is a camouflage 

attempt, the same camouflage he has throughout this entire proceeding [
sic
].”

At that point, defense counsel objected to the word “camouflage,” and the trial court sustained the objection.  The prosecutor went on to tell the jury that defense counsel “wants to divert your attention from the physical evidence and the testimony that you have heard.”

Again, the State’s comments were made in rebuttal to defense counsel’s closing argument in which counsel repeatedly questioned L.E.’s version of the assault and her actions on that day.  Unlike 
People v.
 Kidd
, 147 
Ill. 2d
 510, 591 
N.E.2d
 431 (1992), on which defendant relies, the prosecutor in the instant case did not suggest that the defense was fabricated.  Instead, the State pointed out, accurately we might add, that the defense’s closing argument focused on the victim’s role in the assault.  The State’s comments did not constitute error.  

Defendant next argues that an assistant State’s Attorney made an improper and prejudicial remark during her testimony.  Cook County Assistant State’s Attorney Catherine Quinlan testified that she took a statement from defendant at the police station.  On redirect examination, the State asked Quinlan why she approved felony charges against defendant.  Following an objection by defense counsel, Quinlan answered, “The evidence in this case overwhelmingly supports the charge.”  

Defendant contends that Quinlan improperly expressed her personal opinion as to his guilt and that her testimony was prejudicial because it characterized the evidence against him as “overwhelming.”  He asserts that the testimony “made it appear that the issue of Watson’s guilt or innocence had already been determined and it took the decision out of the jury’s hands.”  However, unlike the cases that defendant cites, Quinlan did not state her personal opinion of the charges against defendant.  Although Quinlan testified that the evidence “overwhelmingly” supported the charges, that did not reflect on her opinion of defendant’s guilt but instead her opinion as to the strength of the evidence that was presented to her.  Furthermore, as defendant acknowledges, the trial judge admonished the jurors immediately after Quinlan’s statement that the jury’s function was to determine whether the State proved defendant guilty of the charges against him.  The judge also told the jury that a prosecutor’s role is to determine whether a crime was committed and whether the evidence supported charging defendant with that crime.  Defense counsel did not object to those instructions.  Given the nature of the prosecutor’s statement and the trial court’s 
admonition
s to the jury, we conclude that Quinlan’s remark did not prejudice defendant’s case.  Furthermore, because we have not found that any of the complained-of remarks were prejudicial, we necessarily conclude that their cumulative effect did not deprive defendant of a fair trial.  
 

Defendant’s next contention involves the tendered jury instructions as to the offense of aggravated criminal sexual assault.  Although the trial court correctly instructed the jury as to the elements of that crime and the definition of accountability, defendant argues that the absence of accountability language in a separate instruction constituted reversible error.       

The jury received an instruction defining aggravated criminal sexual assault (which included the emphasized language defining the offense under an accountability theory):

“A person, 
or one for whose conduct he is legally responsible
, commits the offense of aggravated criminal sexual assault when he commits criminal sexual assault and displays or threatens to use a dangerous weapon, or the criminal sexual assault is perpetrated during the course of the commission of the offense of aggravated kidnaping.”  (Emphasis added.)  Illinois Pattern Jury Instructions, Criminal, No. 11.57 (4th ed. 2000) (hereinafter IPI Criminal 4th).

The next instruction given to the jury, IPI Criminal 4th No. 11.58, is the subject of defendant’s argument.  The jury was instructed that to support a finding of aggravated criminal sexual assault against a defendant, the State must prove that: (1) the defendant committed an act of sexual penetration upon L.E.; (2) the act was committed by the use of force or threat of force and L.E. did not consent to the act of sexual penetration; and (3) the defendant (a) displayed a dangerous weapon; (b) caused bodily harm to L.E.; or (c) sexually penetrated L.E. during the course of an aggravated kidnaping and unlawful restraint by the defendant.  The jury was instructed that if it found that each of those three propositions was proved beyond a reasonable doubt, it should return a guilty verdict.  In the absence of proof of any one of those propositions, a not guilty verdict should result.   

Defendant correctly asserts that the accountability language present in IPI Criminal 4th No. 11.57 was not included in IPI Criminal 4th No. 11.58.  He contends that pursuant to IPI Criminal 4th No. 5.03, because an accountability theory is raised, the phrase “or one for whose conduct he is legally responsible” should have followed the references to “defendant” in IPI Criminal 4th No. 11.58.  Defendant argues that in the absence of that language in IPI Criminal 4th No. 11.58, the jury received inconsistent and contradictory instructions.

As with his previous contentions, defendant forfeited these arguments by failing to object to the instructions at the time they were given and by failing to include his specific assertions from his posttrial motion.  See 
People v.
 Jackson
, 333 
Ill. App. 3d
 962, 968, 777 
N.E.2d
 626, 632 (2002).  Indeed, the record indicates that when the trial judge re-read IPI Criminal 4th No. 11.58 to the jury to correct a different omission, defendant’s counsel expressly agreed to that version of the instruction, which lacked the accountability language.  Moreover, even had defendant properly preserved his argument, the tendered instructions did not constitute reversible error.

Defendant argues that the omission of the language “or one for whose conduct he is legally responsible” from each portion of IPI Criminal 4th No. 11.58, which defines the elements of the offense, renders that instruction inconsistent with IPI Criminal 4th No. 11.57. 
 In support of his position, defendant discusses 
People v.
 Jenkins
, 69 
Ill. 2d
 61, 370 
N.E.2d 
532 (1977), in which the trial court gave the jury two contradictory instructions on the offense of attempted murder.  In 
Jenkins
, the State’s instruction informed the jury as to the definition of attempted murder, and the defense’s instruction correctly listed the elements that the State must prove, including whether the defendant was not justified in his use of force (the defendant’s use of force was the central issue at trial).  
Jenkins
, 69 
Ill. 2d
 at 64-65, 370 
N.E.2d 
at 533-34.  However, the State’s instruction defining attempted murder did not discuss the use of force, whether reasonable or unreasonable.  
Jenkins
, 69 
Ill. 2d
 at 64, 370 
N.E.2d 
at 533.  As a result, the supreme court noted that the State’s instruction omitted “any reference to an essential element of the case, namely, that defendant must not have been justified in using the force employed, although such was an issue.”  
Jenkins
, 69 
Ill. 2d
 at 65, 370 
N.E.2d 
at 533-34.  The supreme court agreed with the defendant that the two instructions were conflicting and the use of those instructions constituted reversible error.  
Jenkins
, 69 
Ill. 2d
 at 67, 370 
N.E.2d 
at 534-35.  In attempting to liken this case to 
Jenkins
, defendant argues that in omitting the accountability language from IPI Criminal 4th No. 11.58, the trial court omitted the “essential element” of accountability from the definition of the offense of aggravated criminal sexual assault.  However, accountability is not a crime in and of itself, but, rather, a mechanism through which a criminal conviction may result.  
People v.
 Pollock
, 202 
Ill. 2d
 189, 210, 780 
N.E.2d
 669, 681 (2002).   
        
      

W
e find that t
he instant case more closely resembles 
People v.
 Pena
, 317 
Ill. App. 3d
 312, 739 
N.E.2d 
584 (2000).  In 
Pena
, the defendant was charged with armed robbery, among other offenses, and, as in this case, the defendant’s accountability for the crimes was at issue.  
The jury was instructed as to the elements that must be proven to convict the defendant of armed robbery.  
Pena
, 317 
Ill. App. 3d
 at 317-18, 739 
N.E.2d 
at 589.  The instruction defining armed robbery did not include the accountability language of “or ‘one for whose conduct he is legally responsible.’”  
Pena
, 317 
Ill. App. 3d
 at 318, 739 
N.E.2d 
at 589, quoting IPI Criminal 4th No. 14.06, Committee Note at 206.  However, the jury was given IPI Criminal 4th No. 5.03, which defined accountability.  In considering all of the instructions given, the
 court stated that IPI Criminal 4th No. 5.03 “unambiguously sets out a principle of accountability.”  
Pena
, 317 
Ill. App. 3d
 at 318, 739 
N.E.2d at 589.  The court concluded that assuming that the armed robbery instruction was deficient for omitting the accountability language, “the instructions as a whole ameliorated any defect stemming from the omission of the accountability phrase.”  
Pena
, 317 
Ill. App. 3d
 at 319, 739 
N.E.2d
 at 589.      

In determining the propriety of jury instructions, a court must determine whether the jury was fairly, fully and comprehensively informed as to the relevant principles, considering the instructions in their entirety.  
Leonardi v. Loyola University of Chicago
, 168 
Ill. 2d
 83, 100, 658 
N.E.2d
 450, 458 (1995).  
Here, 
the jury was instructed as to the elements of the offense of aggravated criminal sexual assault.  The jury also was given the definition of accountability.  As the 
Pena
 court noted, the purpose of jury instructions is to guide the jury in its deliberations and assist it in reaching a proper verdict through the application of legal principles as they apply to the evidence and the law.  
Pena
, 317 
Ill. App. 3d
 at 318, 739 
N.E.2d at 589, citing 
People v.
 Hester
, 131 
Ill. 2d
 91, 544 
N.E.2d
 797 (1989).  Jury instructions 
should not be read in isolation; they instead should be construed as a whole.  
People v.
 Ward
, 187 
Ill. 2d
 249, 265, 718 
N.E.2d 
117, 129 (1999).  Accordingly, as in 
Pena
, the absence of accountability language from IPI Criminal 4th No. 11.58
 is not fatal because the instructions, when read as a whole, informed the jury of the proof necessary to sustain a conviction on an accountability theory.

Although defendant argues that the instructions given in this case were inconsistent and contradictory like those in 
Jenkins
, we instead agree with the State’s assessment that the jury instructions were complementary.  Based on the evidence presented, defendant could not have been convicted of aggravated criminal sexual assault as a principal because McIntosh, not defendant, assaulted L.E.  Therefore, in order for the jury to reach the verdict that it did, the jury necessarily must have considered the accountability instruction, IPI Criminal 4th No. 5.03, and applied that instruction in conjunction with IPI Criminal 4th No. 11.58.  For those reasons, we find that in construing the instructions as a whole, the jury was properly informed as to the proof necessary to convict defendant.  The jury was properly apprised of the law as it should be applied.
  Defendant was not denied a fair trial.

Lastly, we address the State’s contention that defendant’s concurrent 10-year terms for aggravated criminal sexual assault and aggravated kidnaping instead should be served consecutively.  The State argues that pursuant to section 5-8-4(a) of the Unified Code of Corrections, consecutive sentences are required when a defendant commits offenses as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective and one of the offenses is aggravated criminal sexual assault.  730 ILCS 5/5-8-4(a) (West 1998); 720 ILCS 5/12-14 (West 1998).  Defendant was convicted of aggravated criminal sexual assault and aggravated kidnaping.  The State asks this court to vacate defendant’s concurrent sentences and remand this case to the trial court for the imposition of consecutive sentences.  

Defendant responds that he should not receive consecutive sentences for several reasons.  He first argues that his aggravated kidnaping conviction should be vacated because L.E.’s kidnaping was incidental to her sexual assault
 and did not constitute a separate offense.  We note that defendant never offered this argument at trial in an attempt to avoid one of his two convictions.  Nevertheless, even if defendant had extended this theory previously, we find that, based on the circumstances of this case, the asportation and detention of L.E. were sufficiently removed from the sexual assault as to support defendant’s conviction for aggravated kidnaping.  

In determining whether the asportation or detention of an individual rises to the level of a kidnaping, the court considers: (1) the duration of the asportation or detention; (2) whether the asportation or detention occurred during the commission of a separate offense; (3) whether the asportation or detention is inherent in the separate offense; and (4) whether the asportation or detention created a significant danger to the victim independent of that posed by the separate offense.  
People v.
 Quintana
, 332 
Ill. App. 3d
 96, 104, 772 
N.E.2d
 833, 842 (2002).  Regarding the first factor, defendant argues that the duration of L.E.’s detention was insufficient, pointing out that, according to her testimony, the assault occurred at about 4 p.m. and she was talking to police an hour later.  However, “it is well settled that 
‘a kidnaping conviction is not precluded by the brevity of the asportation or the limited distance of the movement.’”  
People v.
 Jackson
, 331 
Ill. App. 3d
 279, 294, 771 
N.E.2d
 982, 995 (2002) (noting cases in which asportation of less than one block and detention of a few minutes have been sufficient to support a kidnaping conviction), quoting 
People v.
 Ware
, 323 
Ill. App. 3d
 47, 54, 751 
N.E.2d 
81, 88 (2001).    

Regarding the second and third factors, the detention and asportation of L.E. occurred separately from the offense of sexual assault.  L.E. was forcibly taken from a car and into defendant’s apartment prior to being assaulted.  Defendant argues that the detention and asportation of L.E. were inherent to the sexual assault because L.E. was taken to the apartment “for the sole purpose of committing” that offense.  We do not agree that circumstance makes the asportation of L.E. inherent in the underlying offense.  The asportation or detention of a victim is not an element of the offense of aggravated criminal sexual assault.  
Jackson
, 331 
Ill. App. 3d
 at 295, 771 
N.E.2d 
at 996, citing 720 ILCS 5/12-14 (West 1998).  These facts are clearly distinguishable from the cases on which defendant relies, including 
People v.
 Young
, 115 
Ill. App. 3d
 455, 450 
N.E.2d 
947 (1983) (defendant grabbed victim and threw her against a wall before sexually assaulting her; kidnaping conviction reversed), and 
People v.
 Smith
, 91 
Ill. App. 3d
 523, 414 
N.E.2d 
1117 (1980) (defendants forced themselves into victim’s car and drove victim around in his car before robbing him; aggravated kidnaping conviction reversed).  In 
Young
 and 
Smith
, the defendants’ restraint and detention of their victims was necessary to the commission of the crimes.  Here, in contrast, defendant and McIntosh did not have to force L.E. out of the car at gunpoint and take her into defendant’s apartment in order to sexually assault her.  As to the final factor, defendant, while holding a gun, told L.E. he would shoot her if she did not get out of the car.  L.E. therefore faced a danger independent of the sexual assault.
  The facts of this case support defendant’s conviction for aggravated kidnaping as a separate offense.  Therefore, we reject his assertion that consecutive sentences are not warranted in this case.  Moreover, because we conclude that the asportation and detention of L.E. were not incidental to the sexual assault, we reject defendant’s argument that consecutive sentences are improper because he was convicted of two crimes that arose from the same physical act.

Those contentions aside, defendant accurately states that at his sentencing hearing, the prosecutor expressly asked the trial court to sentence defendant to concurrent terms.  Defendant asserts that the State cannot now contend that consecutive terms are mandated.
  However, the State’s failure to demand consecutive sentences is not determinative because if the trial court sentences a defendant to concurrent terms where the statute requires consecutive terms, the trial court has acted beyond its power, albeit unintentionally.  
People v.
 Childs
, 278 
Ill. App. 3d
 65, 75, 662 
N.E.2d 
161, 167 (1996).  The requirements of section 5-8-4(a) are not the type of “personal rights” that the State or the defendant can waive.  
People v.
 Medrano
, 282 
Ill. App. 3d
 887, 893, 669 
N.E.2d 
114, 118 (1996).  As defendant acknowledges, a sentence that does not conform to 
a statutory requirement is void, and the appellate court has the authority to correct such an order at any time.  
People v.
 Arna
, 168 
Ill. 2d
 107, 113, 658 
N.E.2d 
445, 448 (1995).  Accordingly, we affirm defendant’s convictions and grant the State’s request to remand this case to the trial court for the imposition of consecutive sentences.       

Affirmed in part and vacated in part; cause remanded. 

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.
   

FOOTNOTES
1:  In a bench trial simultaneous to defendant’s jury trial, McIntosh was convicted of aggravated criminal sexual assault and aggravated kidnaping.  This court has affirmed McIntosh’s convictions.
  
People v.
 McIntosh
, No. 1-01-2740 (2003) (unpublished order under Supreme Court Rule 23).  In addition, this court vacated McIntosh’s concurrent sentences of 16 years and 10 years and remanded for the imposition of consecutive sentences pursuant to section 5-8-4(a) of the Unified Code of Corrections (730 ILCS 5/5-8-4(a) (West 1998)).    

2: 
As his defense, McIntosh presented alibi testimony.
  
McIntosh
, slip op. at 6-7.