# Illinois Official Reports

## Supreme Court

---

### *People v. Coats*, 2018 IL 121926

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LESHAWN COATS, Appellant. |
| Docket No. | 121926 |
| Filed | January 19, 2018 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Vincent M. Gaughan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, State Appellate Defender, Patricia Mysza, Deputy Defender, and Samuel M. Hayman, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant. |
| | Lisa Madigan, Attorney General, of Springfield (David L. Franklin, Solicitor General, and Michael M. Glick and Retha Stotts, Assistant Attorneys General, of Chicago, of counsel), for the People. |
| Justices | JUSTICE THEIS delivered the judgment of the court, with opinion. |
| | Chief Justice Karmeier and Justices Freeman, Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1 Following a bench trial in the circuit court of Cook County, defendant Leshawn Coats was convicted of several offenses, including being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2012)) and armed violence (*id.* § 33A-2(a)). The trial court sentenced him to 7 years in prison on the armed habitual criminal count, consecutive to a term of 15 years in prison on the armed violence count. Defendant appealed, contending that his convictions were predicated on the same physical act of gun possession in violation of the one-act, one-crime rule. The appellate court concluded that the one-act, one-crime rule did not prohibit the multiple convictions. 2016 IL App (1st) 142028-U. For the reasons that follow, we affirm the judgment of the appellate court.

¶ 2                                    BACKGROUND

¶ 3 In June 2013, Chicago police officer Edwin Utreras was part of a team executing a search warrant at a two-flat basement apartment in Chicago. After forcing entry into the apartment and detaining four individuals, Utreras and his team approached a locked, rear room. They knocked on the door and heard people shuffling around inside the room, but nobody answered the door. Utreras's partner then forced entry into the room, where Utreras saw defendant holding a handgun in his left hand and two plastic bags in his right hand, which he was placing on a window ledge.

¶ 4 Utreras recovered a .45-caliber handgun loaded with nine live rounds of ammunition, as well as both bags. Inside one bag was a clear bag containing 53 smaller bags of suspected crack cocaine and one "knotted bag" containing suspected crack cocaine. Inside the other bag was a clear plastic bag containing 92 bags of suspected heroin. Drugs were also recovered in other areas of the room, including suspected heroin recovered from the refrigerator. The police also recovered cash currency, ammunition, and narcotics packaging materials. The contents of the plastic bags were tested. The parties stipulated that a chemist verified the contents of the plastic bags defendant was holding, which contained over 15 grams of heroin. The parties also stipulated to defendant's prior convictions for robbery and aggravated robbery.

¶ 5 The trial court found defendant guilty of being an armed habitual criminal, armed violence, and two counts of possession of a controlled substance (heroin) with intent to deliver. The possession counts merged into the armed violence count. Defendant was sentenced to 7 years in prison on the armed habitual criminal count to run consecutively to a term of 15 years in prison on the armed violence count.[1]

¶ 6 On appeal, defendant argued for the first time that his convictions for both armed violence and armed habitual criminal violated the one-act, one-crime rule because they were predicated on the same physical act of gun possession. After reviewing the claim under the second prong of the plain error doctrine, the appellate court affirmed, finding that the offenses did not result

---

[1] Consecutive sentences were mandated under section 5-8-4(d)(3) of the Unified Code of Corrections where defendant was convicted of armed violence based upon the predicate offense of a violation of subsection (a) of section 401 of the Illinois Controlled Substances Act (720 ILCS 570/401 (West 2012)). 730 ILCS 5/5-8-4(d)(3) (West 2012).

from precisely the same physical act and that neither offense was a lesser-included offense of the other. 2016 IL App (1st) 142028-U, ¶¶ 27-29.

¶ 7 In reaching its conclusion that the multiple convictions did not violate the one-act, one-crime rule, the court recognized a conflict between the Second District decision in *People v. Williams*, 302 Ill. App. 3d 975 (1999), and the Fourth District's decision in *People v. White*, 311 Ill. App. 3d 374 (2000). 2016 IL App (1st) 142028-U, ¶¶ 25-27. The appellate court found *White* to be more persuasive. *Id.* ¶ 27. We allowed defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Mar. 15, 2016).

¶ 8 ANALYSIS

¶ 9 Initially, defendant recognizes that he has forfeited his one-act, one-crime argument by failing to raise it before the trial court, but he seeks review under the plain error doctrine. The plain error doctrine allows a reviewing court to consider an unpreserved error "(1) when 'a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error,' or (2) when 'a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence.' " *People v. Sebby*, 2017 IL 119445, ¶ 48 (quoting *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007)).

¶ 10 The State maintains that defendant has forfeited his plain error argument because he failed to show that the claimed error was clear or obvious. We disagree. This court has previously explained that one-act, one-crime violations fall within the second prong of the plain error doctrine as an obvious error so serious that it challenges the integrity of the judicial process. *People v. Nunez*, 236 Ill. 2d 488, 493 (2010); see also *People v. Artis*, 232 Ill. 2d 156, 168 (2009) (protections afforded to defendants by the one-act, one-crime rule are integral to maintaining the integrity of the judicial process); *In re Samantha V.*, 234 Ill. 2d 359, 378-79 (2009) (a one-act, one-crime violation "satisf[ies] the second prong of the plain-error test"). Thus, despite the forfeiture, we will address defendant's argument under the second prong of the plain error doctrine.

¶ 11 We first consider whether a one-act, one-crime error occurred. In *People v. King*, 66 Ill. 2d 551, 566 (1977), this court held that a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act. Although this rule is not derived from the constitutional prohibition against double jeopardy, we have continued to reaffirm and adhere to it over the last four decades based on the prejudice that results when there are multiple convictions for precisely the same criminal conduct. *Artis*, 232 Ill. 2d at 164-68.

¶ 12 Whether a violation of the rule has occurred is a question of law, which we review *de novo*. *People v. Robinson*, 232 Ill. 2d 98, 105 (2008). In making that determination, this court has long followed a two-step analysis. *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). First, the court ascertains whether the defendant's conduct consisted of a single physical act or separate acts. *Id.* If it is determined that the defendant committed multiple acts, the court then moves to the second step and determines whether any of the offenses are lesser-included offenses. *Id.* If none of the offenses are lesser-included offenses, then multiple convictions are proper. *Id.*

¶ 13                                    A. One Act or Several Acts

¶ 14        We must first determine whether defendant's conduct consisted of separate physical acts or a single physical act. Defendant maintains that his armed violence conviction was carved from precisely the same physical act as his armed habitual criminal conviction because they both arose from his act of possessing the handgun. We disagree.

¶ 15        The definition of an "act," as stated in *King*, is "any overt or outward manifestation which will support a different offense." *King*, 66 Ill. 2d at 566. Although defendant is correct that both offenses shared the common act of possessing the handgun, under the definition outlined in *King*, " '[a] person can be guilty of two offenses when a common act is part of both offenses' " (*Rodriguez*, 169 Ill. 2d at 188 (quoting *People v. Lobdell*, 121 Ill. App. 3d 248, 252 (1983))) "or part of one offense and the only act of the other offense" (*Lobdell*, 121 Ill. App. 3d at 252).

¶ 16        Several examples illustrate this application of *King*. Most notably, in *Rodriguez*, the defendant was convicted of aggravated criminal sexual assault and home invasion. Although both offenses shared the common act of the defendant threatening the victim with a gun, the defendant's unlawful entry into the victim's bedroom was a separate act that supported the home invasion offense. *Rodriguez*, 169 Ill. 2d at 188-89. We explained that, " '[a]s long as there are multiple acts as defined in *King*, their interrelationship does not preclude multiple convictions.' " (Emphasis omitted.) *Id.* at 189 (quoting *People v. Myers*, 85 Ill. 2d 281, 288 (1981)); see also *People v. McLaurin*, 184 Ill. 2d 58, 105 (1998) (holding that multiple convictions for intentional murder and home invasion were proper because, although both involved the same physical act of setting a fire, the physical act of entering the dwelling of the victim was a separate act that supported the home invasion offense); *People v. Marston*, 353 Ill. App. 3d 513, 519 (2004) (holding that multiple convictions for home invasion and aggravated battery were proper despite the common act of striking the victim with a pole where the defendant's entry into the home was a separate act that supported the home invasion conviction); *Lobdell*, 121 Ill. App. 3d at 252 (holding that multiple convictions for residential burglary and home invasion were proper because, despite the one act of entry into the victim's home which served as the basis for both convictions, the home invasion offense involved an additional act of intentional injury and, therefore, the two offenses were not carved from precisely the same physical act); *People v. Tate*, 106 Ill. App. 3d 774, 778-79 (1982) (holding that multiple convictions for home invasion and aggravated battery were proper despite the common act of stabbing the victim where the unlawful entry was a separate act applicable only to the home invasion offense).

¶ 17        The facts of this case reveal that defendant's conduct consisted of two physical acts: possession of the handgun and possession of the drugs. Although the two offenses shared the common act of possession of the handgun, which served as a basis for both convictions, defendant's armed violence conviction involved a separate act, possessing the drugs. That act was applicable only to the armed violence offense. Since the possession of the handgun was only part of the conduct which formed the basis for the separate armed violence conviction, the two offenses were not carved from precisely the same physical act.

¶ 18        Defendant recognizes our holding in *Rodriguez* but, nevertheless, maintains that the *King* analysis implicitly requires a determination of whether the offenses share a "crucial" act. He articulates the rule as follows: If the two offenses share a common act that formed the "crux" or

- 4 -

"essence" of the crime, multiple convictions cannot stand. Defendant cites decisions from this court that he argues cannot otherwise be reconciled without applying this rule, particularly our decision in *McLaurin*. Under defendant's construction of *King*, he asserts that the possession of the handgun was the "crux" of both offenses and, therefore, both convictions cannot stand. We need not consider whether possession was the "crux" of both offenses because we reject defendant's construction of *King*.

¶ 19    In the four decades since *King* was decided, we have never applied the one-act, one-crime rule in the manner defendant urges here. Further, our decision in *McLaurin*, 184 Ill. 2d 58, does not support the adoption of defendant's "crux" theory. In that case, the defendant's conduct involved entering the victim's house, tying him up, and setting him on fire. The defendant was convicted of several offenses including, *inter alia*, first degree murder, home invasion, aggravated arson, and residential burglary. He made several one-act, one-crime assertions involving the four convictions. As previously explained, his convictions for murder and home invasion could both stand because, although the murder and home invasion offenses shared the common act of setting the fire, the additional physical act of unlawfully entering the dwelling of the victim supported the home invasion conviction. *Id.* at 105.

¶ 20    The defendant then argued that his conviction for residential burglary must be vacated because it was predicated on the same unauthorized entry that established the conviction for home invasion. We agreed. Although not expressly stated, our reasoning was not based on any determination of the "crux" or "essence" of the crimes. Instead, our rationale is evident from reviewing the defendant's conduct in relation to all of the convictions. Under the circumstances, not only did the offense of residential burglary share the common act of unlawful entry, there was no additional act that could support a separate offense because the act of setting the fire had already been attributed to the murder conviction. *Id.* at 105-06. Similarly, the aggravated arson conviction and the murder conviction were both carved from precisely the same physical act of setting the fire, and there was no additional physical act that could support the separate aggravated arson offense. Accordingly, under one-act, one-crime principles, the defendant was properly convicted of two offenses for two separate physical acts—the unlawful entry and the setting of the fire. Contrary to defendant's contention, the result in *McLaurin* is indeed consistent with this court's construction of *King* and our decision in *Rodriguez*.

¶ 21    Next, defendant asserts that *King*'s application here is irreconcilable with the notion that one cannot be convicted of both intentional and felony murder of the same victim despite the fact that felony murder involves a separate act in addition to the acts which caused the death—namely, the predicate felony. Defendant maintains that the only way to reconcile the inconsistency is to consider the "crux" of the crime, which he characterizes as the act or acts which caused the death. Again, we need not consider the "crux" of the offenses in one-act, one-crime analysis to reconcile *King* in the felony murder context with its application here.

¶ 22    The offense of first degree murder is set forth in section 9-1(a) of the Criminal Code of 2012. 720 ILCS 5/9-1(a) (West 2016). In that statute, the Illinois General Assembly provided for three ways to commit one offense: intentional, knowing, and felony murder. *Id.* As we have previously explained, the different theories embodied in the murder statute are merely different ways to commit the same offense. *Id.*; *People v. Smith*, 233 Ill. 2d 1, 16 (2009).

¶ 23    Although felony murder involves an additional physical act beyond the acts that cause the death, the legislature has determined that there is only one offense of murder. Under *King*, felony murder is not a separate offense but, rather, a separate theory of the same offense. See *King*, 66 Ill. 2d at 566. Accordingly, a defendant cannot be convicted of both the intentional murder and felony murder of the same victim.

¶ 24    Defendant is correct that in certain circumstances convictions for multiple counts of the same offense can be proper. In those cases, the question for the court would be to determine the legislative intent behind the statute and to determine whether there is evidence to support multiple violations of the statute. See, *e.g.*, *People v. Butler*, 64 Ill. 2d 485, 489 (1976) (upholding two convictions for armed robbery where the defendant threatened the use of force against two people and the statute defined the criminal act as being directed against the person); *People v. Angarola*, 387 Ill. App. 3d 732, 740 (2009) (noting that under the forgery statute, the legislature recognized that a defendant can be properly charged based on each stage of the process, allowing a defendant to be convicted for both the act of making the forged document and the act of delivering the forged document). In this case, multiple counts of the same offense are not at issue. Thus, those types of legislative considerations are not applicable here.

¶ 25    Lastly, we are asked to reconcile the two conflicting outcomes in the appellate court cases of *Williams* and *White*. Again, we need not apply defendant's "crux" theory to analyze these cases. In both cases, the defendants were convicted of armed violence predicated on being armed while in possession of a controlled substance (720 ILCS 5/33A-2 (West 1996)) and unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)). In *Williams*, the officer found a gun and a bag of cocaine in a car where defendant had been sitting. The court held that the simultaneous possession of the gun and drugs was a common act that could not support convictions for both offenses. *Williams*, 302 Ill. App. 3d at 978. In *White*, the defendant was arrested while in possession of a gun and cocaine. The court disagreed with *Williams*, concluding that the possession of the gun and the drugs were separate acts. *White*, 311 Ill. App. 3d at 386.

¶ 26    Defendant initially maintained before this court that *Williams* was correctly reasoned, but he acknowledged at oral argument that the holding in *Williams* is erroneous. Two separate acts, possession of the gun and possession of the drugs, do not become one common act solely by virtue of being proximate in time. *People v. Almond*, 2015 IL 113817, ¶ 48 (stating that although defendant's possession of two separate and distinct items of contraband was simultaneous, "that factor alone does not render his conduct a 'single act' for purposes of the one-act, one-crime rule"). Additionally, as we explained in *Rodriguez*, a defendant can be convicted of two offenses even when they share a common act, as long as there is an additional act that can support a separate offense. *Rodriguez*, 169 Ill. 2d at 189. As the court in *White* concluded, the defendant's possession of the gun was an act distinct from the defendant's possession of the drugs which could support the separate offense of armed violence. Consequently, based on this court's precedent, *Williams* misapplied the one-act, one-crime rule. We therefore expressly overrule it.

¶ 27    We acknowledge that in *White*, the court appears to have created some confusion in ascertaining what conduct constitutes an "act" under *King*. The court reasoned that "[a]lthough both offenses shared the common act of possession of a weapon, armed violence required the

- 6 -

additional act of possession of the drugs, and unlawful possession of a weapon by a felon required the *additional element of status as a felon*." (Emphasis added.) *White*, 311 Ill. App. 3d at 386. A felon's status is not an "act" but, rather, a state of being. To clarify, a defendant's status is not factored into the first part of the *King* analysis to determine whether a defendant's conduct consists of one act or several acts. Nevertheless, the holding in *White* is ultimately correct because the gun possession and the drug possession were separate acts.

¶ 28        In sum, under the first step in the one-act, one-crime analysis, defendant's conduct consisted of multiple acts. We next consider the second step.

¶ 29                                        B. Lesser-Included Offenses

¶ 30        Under the second step in the one-act, one-crime analysis the court determines whether any of the offenses are lesser-included ones. The appellate court, applying the charging instrument approach, found that the offenses here were not lesser included where each charging instrument did not set out the main outline for the other offense. 2016 IL App (1st) 142028-U, ¶ 29. Defendant does not challenge that finding here. However, in the interest of maintaining a sound body of precedent, we note that the appellate court erroneously applied the charging instrument approach to that determination, relying on *People v. Pena*, 317 Ill. App. 3d 312, 323 (2000). As we have explained, when the issue of lesser-included offenses arises in the context of a one-act, one-crime issue where the defendant was convicted of both offenses, we apply the abstract elements approach as opposed to determining whether an uncharged offense is a lesser-included offense to a charged offense using the charging instrument approach. *People v. Miller*, 238 Ill. 2d 161, 166 (2010). Nevertheless, employing that approach would not have changed the result in this case. Compare 720 ILCS 5/33A-2 (West 2012), with *id.* § 24-1.7(a)(1).

¶ 31                                        CONCLUSION

¶ 32        For the reasons set forth above, we conclude that defendant's convictions were proper under the one-act, one-crime rule. Accordingly, because we find no error, there is no plain error. We affirm the judgment of the appellate court, which affirmed the judgment of the circuit court.

¶ 33        Affirmed.