# Illinois Official Reports

## Appellate Court

*People v. Scott*, 2015 IL App (1st) 133180

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEMAR SCOTT, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-13-3180 |
| Filed | December 1, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-2985; the Hon. Neil J. Linehan, Judge, presiding. |
| Judgment | Affirmed in part, vacated in part, and remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and James J. Morrissey, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Sara McGann, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Presiding Justice Pierce and Justice Neville concurred in the judgment and opinion. |

**OPINION**

¶ 1	Defendant Lemar Scott was convicted in a bench trial of two counts of armed robbery, two counts of aggravated discharge of a firearm, and one count of aggravated battery with a firearm, and sentenced to an aggregate term of 43 years' imprisonment. On appeal, Scott contends that several of his convictions should be vacated under the one-act, one-crime rule. We agree, and vacate three of Scott's five convictions under the one-act, one-crime rule. Scott also contends, and the State rightly agrees, that we remand for a new *Krankel* hearing (*People v. Krankel*, 102 Ill. 2d 181 (1984)) before a different judge. The trial court had invited the State to take an adversarial role in the preliminary inquiry stage of Scott's claim of ineffective assistance of trial counsel, a manner of proceeding that the Illinois Supreme Court rebuffed in *People v. Jolly*, 2014 IL 117142.

¶ 2	BACKGROUND

¶ 3	The evidence at trial showed that Scott's codefendant Theodore Smith ordered pizzas for delivery. (Smith pled guilty and is not a party to this appeal.) At about midnight, Anthony Thorpe, who had delivered pizzas for 14 years, drove to the address with his teenage niece Alicia Taylor to deliver the pizzas. Thorpe got out of his gray Buick LeSabre with the pizzas, and walked to the curb. Smith, sitting on the front porch, asked Thorpe if he was the "pizza delivery guy." Something about the situation made Thorpe feel nervous, so he handed the pizzas to Taylor, who was in the front passenger seat. Just then, Thorpe saw Scott approaching him with a bluish-black gun. Scott ordered Thorpe not to move and fired about five shots towards him. Thorpe started running down the street, but stopped, "to make sure [defendant] didn't do anything" to Taylor.

¶ 4	Thorpe tried to distract Scott by telling him he had money, but Scott fired another shot at Thorpe and turned to Taylor, telling her to open the car door, which she did. Scott demanded money. Taylor replied that she had none. Scott took the pizzas from her and as he was giving the pizzas to Smith, Taylor moved into the driver's seat and tried to start the car. Scott shot at Taylor, hitting her in the thigh, after which Scott and Smith ran towards Smith's house.

¶ 5	Responding police officers arrested both offenders, recovered two pizza boxes containing hot pizzas from inside of Smith's home, and recovered the gun used in the robbery in an alley near where they arrested Scott.

¶ 6	Regarding the offenses against Thorpe, the trial court found Scott guilty of two counts of armed robbery (counts IX and XIII), and one count of aggravated discharge of a firearm (count VI). Regarding the offenses against Taylor, the trial court found Scott guilty of four counts of armed robbery (counts X-XII, XIV), one count of aggravated discharge of a firearm (count V), one count of aggravated battery (count XV), and one count of aggravated battery with a firearm (count II).

¶ 7	Scott, through counsel, filed a motion for new trial, which the trial court denied. Scott asked to file a *pro se* motion for a new trial, which included numerous claims of ineffective assistance of trial counsel. The trial court continued the matter, and when it was recalled, the trial court had decided to combine the motion for new trial and the *Krankel* hearing.

¶ 8	At the hearing, the State called Scott's trial counsel, an assistant public defender, as a witness. The public defender testified that he had several conversations with Scott covering

the strengths of Scott's case and why, as a matter of trial strategy, he decided not to call several witnesses. The public defender either denied or rebutted Scott's claims of ineffective assistance of counsel. The trial court then instructed Scott to proceed by himself to cross-examine his trial counsel, warning Scott that his questions "can't be argumentative and they can't be confrontational." Scott cross-examined the public defender, who repeatedly denied Scott's claims. When Scott attempted to ask the public defender about what his investigator found when the investigator interviewed several potential witnesses whom Scott had suggested, the State objected and the court told Scott he was "getting far [a]field." Scott responded that he could prove the public defender was a liar, but the court told him to "have a seat." After hearing the testimony and argument, the trial court denied Scott's *pro se* motion, stating that the record failed to substantiate the claims in his motion for new trial that the public defender was ineffective.

¶ 9    The parties proceeded to sentencing. After hearing arguments in aggravation and mitigation, the trial court imposed sentence. With respect to Scott's convictions involving Thorpe, the trial court sentenced Scott to 4 years for aggravated discharge of a firearm (count VI), and 28 years for armed robbery during which he personally discharged a firearm (count XIII), merging count IX (armed robbery) into count XIII. With respect to Scott's convictions involving Taylor, the court sentenced Scott to 8 years for aggravated battery with a firearm (count II), merging count XV (aggravated battery) into count II; 4 years for aggravated discharge of a firearm (count V); and 35 years for armed robbery during which he personally discharged a firearm that proximately caused great bodily harm to Taylor (count XII), merging counts X, XI, and XIV (armed robbery) into count XII. The trial court also found that Taylor suffered severe bodily injury during the robbery (she could not walk for two years and had fragments of the bullet still inside her). Therefore, Scott's sentences for the armed robbery and aggravated battery with a firearm would run consecutively with all other counts to run concurrently for a total sentence of 43 years' imprisonment.

¶ 10                                     ANALYSIS
¶ 11                         The One-Act, One-Crime Doctrine
¶ 12    Scott argues that several of his convictions must be vacated under the one-act, one-crime doctrine. Scott recognizes that he waived this issue because he did not include it in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Nevertheless, we will review it under the second prong of the plain error doctrine. *People v. Artis*, 232 Ill. 2d 156, 165-66 (2009).

¶ 13    Scott contends, and the State concedes, that his conviction for the armed robbery of Thorpe (count XIII) must be vacated under the one-act, one-crime doctrine because it is based on a single act of taking pizza from Taylor, and no other property was taken from Thorpe. We agree.

¶ 14    Under the one-act, one-crime doctrine, multiple convictions may not spring from the same physical act. *People v. Miller*, 238 Ill. 2d 161, 165 (2010); *People v. King*, 66 Ill. 2d 551, 566 (1977). The one-act, one-crime rule presents a legal question subject to *de novo* review. *People v. Almond*, 2015 IL 113817, ¶ 47.

¶ 15    A person commits armed robbery when he or she knowingly takes property from the person or presence of another by the use of force or by threatening the imminent use of force while carrying a firearm, or during the commission of the offense, personally discharges a firearm. 720 ILCS 5/18-1, 18-2(a)(2), (a)(3) (West 2010). Scott's convictions for armed

robbery of Thorpe (count XIII) and armed robbery of Taylor (count XII) involve knowingly taking pizza from the person or in the presence of Thorpe and Taylor.

¶ 16     Under well-settled Illinois law, multiple armed robbery convictions cannot lie when there is a single taking of property, even when multiple individuals are present and threatened. See *People v. Mack*, 105 Ill. 2d 103, 134-36 (1984) (holding defendant could not be convicted of two counts of armed robbery where there was but one taking of money), *vacated on other grounds*, 479 U.S. 1074 (1987); *People v. Moore*, 214 Ill. App. 3d 938, 944-45 (1991) (holding robberies of two business establishments which involved two complaining witnesses each sufficient to support only two armed robbery convictions); *People v. Hunter*, 42 Ill. App. 3d 947, 951-52 (1976) (defendant may not be convicted of multiple armed robberies where defendant robbed cash register in presence of two people and did not take additional property from either person). Both parties agree that, as in these cited cases, only a single taking of property occurred–the two pizzas from Taylor–resulting in only one act of robbery. Therefore Scott's conviction for armed robbery against Thorpe (count XIII) and sentence (28 years) must be vacated.

¶ 17     Despite its concession on the armed robbery conviction as to Thorpe (count XIII), the State submits that the evidence would support a guilty verdict on the uncharged offense of attempted armed robbery of Thorpe as a lesser-included offense of count IX. That count charged Scott with armed robbery for knowingly taking pizza from the person or presence of Thorpe by using or threatening the imminent use of force while carrying a firearm. The court found Scott guilty of count IX but merged it with the now vacated count XIII. The State maintains that Scott made a substantial step toward committing armed robbery when he threatened the imminent use of force by brandishing a weapon and telling Thorpe not to move.

¶ 18     A person commits the offense of attempt when, with the intent to commit a specific offense, he or she does any act that constitutes a substantial step toward the commission of that offense. 720 ILCS 5/8-4(a) (West 2010). To determine whether an uncharged offense is a lesser-included offense of a charged offense, the reviewing court applies the charging instrument approach. *People v. Kennebrew*, 2013 IL 113998, ¶ 32. In applying the charging instrument approach, we follow two steps: (1) we first look "to the allegations in the charging instrument to see whether the description of the greater offense contains a 'broad foundation' or 'main outline' of the lesser offense"; and (2) if the charging instrument does contain a broad foundation of the lesser offense, we "examine the evidence adduced at trial to decide whether the evidence rationally supports a conviction on the lesser offense." *People v. Kolton*, 219 Ill. 2d 353, 361 (2006). We apply *de novo* review to this inquiry. *Id.*

¶ 19     We find the evidence introduced at trial does not support a conviction for the offense of attempted armed robbery. Although Scott pointed a gun at Thorpe and told him not to move, Scott never demanded pizza or any other property from Thorpe. Therefore, Scott's actions did not constitute a substantial step toward armed robbery. Moreover, we reiterate that, for the same reasons already discussed, Scott cannot be convicted of both armed robbery of Taylor and attempted armed robbery of Thorpe where there was only one attempt, albeit a successful attempt, to take pizza from Taylor. The fact Scott threatened both Thorpe and Taylor does not change this result. See *People v. Palmer*, 111 Ill. App. 3d 800, 808 (1982) (holding only one armed robbery conviction proper where defendant, in single act, took property from presence of two people).

¶ 20    Consequently, we vacate Scott's armed robbery conviction as to Thorpe (count XIII). As to count IX, however, we will not reduce his conviction of armed robbery to the uncharged offense of attempted armed robbery. In addition, we accept Scott's concession in his reply brief that his conviction of aggravated discharge of a firearm as to Thorpe (count VI) remains unaffected.

¶ 21    Scott next contends, and the State again agrees, that the counts of aggravated battery with a firearm and aggravated discharge of a firearm as to Taylor must be vacated under the one-act, one-crime rule. The evidence presented at trial demonstrated that Scott fired his gun once at Taylor, striking her in the leg, before fleeing with the boxes of pizza. The single act of firing at Taylor formed the basis for Scott's convictions of armed robbery, during which he personally discharged a firearm that proximately caused great bodily harm to Taylor (count XII), as well as one count of aggravated battery with a firearm for shooting Taylor about the body (count II), and one count of aggravated discharge of a firearm at Taylor (count V).

¶ 22    As we have already said, multiple convictions for the same physical act are improper. *Miller*, 238 Ill. 2d at 165. Therefore, the three convictions as to Taylor cannot properly exist where they were all based on Scott's single act of firing at her. Under the one-act, one-crime rule, a sentence should be imposed on the more serious offense and the convictions on the less serious offenses should be vacated. *People v. Garcia*, 179 Ill. 2d 55, 71 (1997). Both parties agree that the Class X offense of armed robbery while personally discharging a firearm classifies as the most serious offense. We thus vacate Scott's convictions and sentences for aggravated battery with a firearm (count II) and aggravated discharge of a firearm (count V) as to Taylor. Scott's 35-year sentence for the armed robbery of Taylor must stand.

¶ 23                        The *Krankel* Hearing

¶ 24    Scott finally contends that this cause must be remanded for a new *Krankel* hearing before a different judge where the State improperly took an adversarial role into the inquiry of Scott's *pro se* claims of ineffective assistance of trial counsel.

¶ 25    A *Krankel* inquiry allows the trial court to decide whether to appoint independent counsel to argue a defendant's *pro se* posttrial ineffective assistance claims. *People v. Jolly*, 2014 IL 117142, ¶ 39. A neutral trier of fact initially evaluates the claims at the preliminary inquiry without the State's adversarial participation, creating an objective record for review, so that a reviewing court can determine whether the circuit court properly decided that a defendant is not entitled to new counsel. *Id*. In a preliminary *Krankel* inquiry, the defendant essentially acts *pro se*, which is rather awkward and unsettling because the defendant has to research, prepare, and timely file the posttrial petition as well as convince the judge who oversaw the trial of the factual basis of his or her claims. And, the defendant must do so relying solely on his or her own abilities and aptitude, without the knowledge or skill of criminal law, criminal procedure, or rhetoric. The only "break," if it can so characterized, is that the State's role, if any, in the preliminary *Krankel* stage must be *de minimis*. See *id*. ¶ 38. It is "critical" to the integrity of the proceeding that it not become adversarial. *Id.*

¶ 26    We review *de novo* whether the court properly conducted the preliminary *Krankel* inquiry. *Id*. ¶ 28.

¶ 27    Scott asserts, and the State agrees, that the State's participation in the preliminary *Krankel* inquiry created an adversarial situation requiring reversal under *Jolly*. We also agree. After Scott informed the trial court of his points in support of his motion for a new trial, the trial court asked the State to respond to the ineffective assistance of counsel claims. The State called Scott's trial attorney as a witness, and Scott cross-examined his own counsel. The trial court ultimately denied Scott's motion. The State's adversarial participation at the preliminary *Krankel* hearing frustrated Scott's opportunity for a neutral trier of fact to evaluate his claims.

¶ 28    As in *Jolly*, we remand to a different judge for a new preliminary *Krankel* inquiry in which the State takes a nearly negligible role, if that. *Id.* ¶ 46.

¶ 29                                CONCLUSION

¶ 30    To summarize, we vacate Scott's convictions for the armed robbery of Thorpe (count XIII), aggravated battery with a firearm as to Taylor (count II), and aggravated discharge of a firearm as to Taylor (count V) under the one-act, one-crime rule; reduce Scott's aggregate sentence to 35 years' imprisonment because we vacated count II which carried a consecutive sentence of 8 years; remand the cause for a new preliminary *Krankel* hearing before a different judge; and otherwise affirm the trial court's judgment.

¶ 31    Affirmed in part, vacated in part, and remanded with directions.