2020 IL App (1st) 172505-U

No. 1-17-2505

Order filed March 2, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 13807 |
| | ) | |
| ANTIONE MAHONE, | ) | Honorable |
| | ) | Lawrence E. Flood, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

JUSTICE PIERCE delivered the judgment of the court.
Justices Hyman and Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm defendant's convictions for one count of home invasion with a firearm, one count of armed robbery with a firearm, and one count of aggravated unlawful restraint. We vacate one of defendant's convictions for home invasion with a firearm, one of his convictions for armed robbery with a firearm, and one of his convictions for aggravated unlawful restraint under the one-act, one-crime rule and order the mittimus corrected accordingly. Defendant's 24-year sentence for armed robbery with a firearm is not excessive.

¶ 2    Following a bench trial, defendant Antione Mahone was found guilty, under a theory of accountability, of two counts of home invasion with a firearm (720 ILCS 5/19-6(a)(3) (West

2014)), two counts of armed robbery with a firearm (720 ILCS 5/18-2(a)(2) (West 2014)), one count of residential burglary (720 ILCS 5/19-3(a) (West 2014)), and two counts of aggravated unlawful restraint (720 ILCS 5/10-3.1(a) (West 2014)). After merging the residential burglary with the home invasion, the court sentenced defendant to: two terms of 24 years' imprisonment for the two counts of armed robbery with a firearm; two terms of 21 years' imprisonment for the two counts of home invasion with a firearm; and two terms of 3 years' imprisonment for the two counts of aggravated unlawful restraint, with all terms to be served concurrently.

¶ 3    On appeal, defendant argues, and the State concedes, that under the one-act, one-crime rule: one of his convictions for home invasion must be vacated where both convictions were based on the same physical act; and one of his convictions for armed robbery and both of his convictions for aggravated unlawful restraint must be vacated, where they were based on the same physical act as his armed robbery conviction. Defendant also argues that his 24-year sentence for armed robbery is excessive. For the following reasons, we vacate one of defendant's convictions for home invasion, one of his convictions for armed robbery, and one of his convictions for aggravated unlawful restraint and order the mittimus corrected accordingly. We affirm defendant's remaining convictions.

¶ 4    Defendant and co-defendant Allen James were charged by indictment with: two counts of home invasion with a firearm based on entering an apartment on West Grenshaw Street (counts 1 and 2); two counts of armed robbery with a firearm based on taking property from the presence of Yasmine Jackson (count 3) and Iraca Weakly (count 4); one count of residential burglary (count 5); and two counts of aggravated unlawful restraint based on detaining Jackson (count 6) and

Weakly (count 7) while armed with a firearm.[1] Defendant and James were tried in a simultaneous, but severed, bench trial.

¶ 5    At trial, Hahdessa Figgures, a beautician who worked out of her home, testified that she kept earnings of $13,000 cash in her apartment on West Grenshaw Street. In the summer of 2015, Figgures's nieces, Yasmine Jackson and Iraca Weakly, who were then 15 years old, stayed with her in the apartment and babysat her then 11-month-old son. James, who had previously lived with Figgures in the apartment, is the baby's father. Figgures explained that she and James had broken up prior to 2015, but they still saw each other, and James occasionally stayed overnight in the apartment. He did not have keys to the apartment, and neither he nor defendant had permission to enter the apartment while Figgures was not home on July 22, 2015.

¶ 6    That day, Figgures left her apartment. Jackson, Weakly, and Figgures's baby were in the apartment. When Figgures returned home the following day, she learned from her nieces that something had happened and that her money was gone. Figgures contacted defendant through social media and tried to get her money back. The parties stipulated that defendant replied, "first and foremost, those little girls can tell you I was sitting down the whole time." Figgures never got her money back and after a few days, she reported a robbery to police.

¶ 7    On cross-examination, Figgures testified that she was not home on the morning of July 22, 2015, because she was arrested after an incident during which she had followed James's car, struck it with her car, and the pair argued.

¶ 8    Yasmine Jackson testified that she was at Figgures's apartment on July 22, 2015 with her cousin Iraca Weakly and Figgures's young son. When Jackson woke up, Figgures was not there.

---

[1] James is not a party to this appeal.

Jackson was sitting on the couch watching television with Weakly and the baby when she heard a knock on the door. Weakly opened the door and James, who was holding a gun, pushed his way in. Jackson knew James but had not seen defendant before the incident in question. Defense counsel stipulated to Jackson's in-court identification of defendant as the person who was with James that day.

¶ 9 Defendant sat down in a chair in the dining room. Jackson sat with Weakly and the baby on the couch in the living room, which was connected to the dining room. Defendant did not say anything to Jackson. James ransacked the apartment searching for money. After looking through the rooms and taking everything out of the refrigerator, James came into the living room, pointed the gun at Jackson and Weakly, and asked where the money was. James said he would shoot them if they did not give him the money. Jackson got up, went to her suitcase, retrieved her aunt's money, and gave it to James, after which James and defendant left. Jackson explained that, before James and defendant arrived, Figgures had called and instructed her to get her money and put it somewhere safe. Jackson took the money from the refrigerator and put it in her suitcase.

¶ 10 After James and defendant left, Jackson went to a neighbor's house across the street and called her cousin. Jackson did not call police because she was afraid.

¶ 11 On cross-examination, Jackson stated that, when Figgures got out of jail the following day, Jackson told her that "he took her money." Jackson acknowledged that she did not tell Figgures about the gun until later that day.

¶ 12 In response to the court's questioning, Jackson testified that defendant did not have a weapon. She explained that defendant sat in the chair when he came into the apartment, and he sat there until he left the apartment.

¶ 13    Iraca Weakly testified that she was at the apartment on July 22, 2015 with Jackson and Figgures's baby. Figgures was not there. Sometime between 11:00 a.m. and 2:00 p.m., Weakly heard a knock and answered the door. James barged in with a black gun in his hand. Weakly knew James, but had not seen defendant before the incident in question. Defense counsel stipulated to Weakly's in-court identification of defendant as the person who accompanied James into the apartment.

¶ 14    Weakly sat down on the couch in the front room with Jackson and the baby. Defendant sat down in a chair in the dining room, about 10 to 15 feet away. Defendant did not say anything to Weakly. James went through the apartment throwing things around and looking for money. James came back into the front room, waved the gun, and asked where the money was. Jackson got up and gave James the money, and then James and defendant left the apartment.

¶ 15    After James and defendant left, Weakly, Jackson, and the baby went to Figgures's friend's house across the street. They later went back to the apartment and Weakly used her phone to take photographs of the apartment. The State presented the photographs of the apartment at trial.

¶ 16    Defendant presented four stipulations. First, the parties stipulated that, if called, Officer Celio would testify that at 10:43 a.m., on the date in question, he observed the incident between James and Figgures that led to Figgures's arrest. He conducted a pat-down of both James and defendant and no weapons were recovered. Celio did not search the vehicle James and defendant were travelling in. Second, the parties stipulated that, if called, Officer Chlebek would testify that he was assigned to a call of a burglary on July 25, 2015. He went to Figgures's apartment, where he spoke with her, Jackson, and Weakly. Chlebek was given the name of an offender, Allen James. Third, the parties stipulated that, if called, Detective Becker would testify that he was assigned to

investigate the home invasion and interviewed the victims. Figgures and Weakly did not tell him that they went driving around looking for James after the occurrence. Jackson told Becker that while the defendants were in the apartment, she ran to the kitchen, grabbed the money, and hid it in a suitcase. Fourth, the parties stipulated that, in a videotaped statement, Figgures was asked what happened and replied, "starting from when I was arrested, I was in a rage of Allen James spending the night out and cheating on me."

¶ 17   The trial court found defendant guilty on all counts based on a theory of accountability. In doing so, the court stated that defendant was present and aided James in carrying out the crimes charged. Defendant filed a "Motion to Vacate Convictions Due to Insufficiency of Evidence," which the trial court denied.

¶ 18   At sentencing, the State argued that this was a bold act by both defendants, who knew no adult was home, went to the apartment with a firearm, and ransacked the house looking for money. The State noted that although defendant did not have the gun in his hand, he assisted James by sitting near the girls and intimidating them. The State pointed out that defendant had prior convictions for drug charges in 2006 and 2008, forgery in 2011, and a federal bank fraud case in 2013. He was sentenced to 13 months in prison and supervised release for the bank fraud, and was on supervised release for that offense at the time he committed the present offenses.

¶ 19   The Pre-sentencing Investigation Report (PSI) additionally showed that defendant played basketball and earned B's and C's in high school and had earned his GED. He had been employed for a year-and-a half by Saks Fifth Avenue and had also worked for Shamrock Towing for about four years. Defendant maintained a good relationship with his family, lived with his mother, and has one child.

¶ 20    In mitigation, defense counsel argued that defendant did not have any convictions for crimes of violence, and that he had received probation for every case except the fraud case. Prior to the present charges, defendant had been employed for several years on a full-time basis.

¶ 21    In allocution, defendant stated that he is not a man of trouble, was a community activist and helped with a Fourth of July program every year for neighborhood children. He worked as a car loader alongside his father. Defendant informed the court that he is a father, who wanted to get back to raise his own child.

¶ 22    In imposing sentence, the court stated it had reviewed the PSI, heard matters in aggravation and mitigation, and had taken statutory factors into consideration. The court further noted that this was not a typical armed robbery and home invasion due to the preceding domestic issue and, based on that, there was an argument for leniency. However, the court pointed out that this was a serious matter, where two teenage girls were babysitting a child when defendants came in, and there was clear evidence a gun was used. The court sentenced defendant to: 9 years plus the 15-year firearm enhancement (720 ILCS 5/18-2(a)(2), (b) (West 2014)), for a total of 24 years in prison for each count of armed robbery with a firearm; 6 years plus the 15-year firearm enhancement (720 ILCS 5/19-6(a)(3), (c) (West 2014)), for a total of 21 years in prison for each count of home invasion with a firearm; and 3 years for each count of aggravated unlawful restraint. The court merged the residential burglary charge with home invasion for sentencing purposes and ordered that all terms be served concurrently. The trial court denied defendant's motion to reconsider sentence.

¶ 23    On appeal, defendant first contends, and the State concedes, that based on the one-act, one-crime rule: one of his convictions for home invasion with a firearm must be vacated because they were both based on the same physical act; and one of his convictions for armed robbery with a

firearm, and both of his convictions for aggravated unlawful restraint should be vacated because they were based on the same physical act as his armed robbery conviction. We agree in part, and vacate one of defendant's convictions for home invasion with a firearm, one of his convictions for armed robbery with a firearm, and one of his convictions for aggravated unlawful restraint.

¶ 24    Initially, we note that defendant forfeited his claims by failing to preserve them for appeal. See *People v. Enoch*, 122 Ill. 2d 176, 186-88 (1988) (examining general rule that both an objection at trial and a written posttrial motion are necessary to preserve an alleged error for review). However, the State does not argue forfeiture and therefore, waives any argument of forfeiture. See *People v. Williams*, 193 Ill. 2d 306, 347-48 (2000). Additionally, an alleged one-act, one-crime violation is reviewable under the second prong of the plain error doctrine because it is a substantial right that affects the integrity of the judicial process. *People v. Coats*, 2018 IL 121926, ¶ 10. Accordingly, we review defendant's claims.

¶ 25    In considering whether a violation of the one-act, one-crime rule occurred, we first determine whether defendant's conduct consisted of a single physical act or separate acts. *Coats*, 2018 IL 121926, ¶ 12. Multiple convictions are improper where they arise from the same physical act. *Id.*; see *People v. King*, 66 Ill. 2d 551, 566 (1977). An "act" is "any overt or outward manifestation which will support a different offense." *People v. Rodriguez,* 169 Ill. 2d 183, 188 (1996) (quoting *King*, 66 Ill. 2d at 566). If defendant's conduct is based on more than one physical act, then we consider whether any of the offenses are lesser-included offenses. *Coats*, 2018 IL 121926, ¶12. Whether a conviction should be vacated under the one-act, one-crime rule is a question of law, which we review *de novo*. *Id.*; *People v. Johnson*, 237 Ill. 2d 81, 97 (2010).

¶ 26    First, defendant was charged with and convicted of two counts of home invasion based on the same physical act of entering the home on West Grenshaw Street. "[A] defendant can stand convicted of only one count of home invasion where there was only one entry regardless of the number of victims." *People v. Sims*, 167 Ill. 2d 483, 523 (1995) (citations omitted). We agree with the parties that defendant's two convictions for home invasion were based on the same physical act of entry and, therefore, his conviction for home invasion under count 2 must be vacated. See *id.*; *Coats*, 2018 IL 121926, ¶12.

¶ 27    Second, defendant was charged with and convicted of two counts of armed robbery based on the single physical act of taking Figgures's money from the presence of Jackson (count 3) and from the presence of Weakly (Count 4). "[M]ultiple armed robbery convictions cannot lie when there is a single taking of property, even when multiple individuals are present and threatened." *People v. Scott*, 2015 IL App (1st) 133180, ¶ 16 (citing *People v. Mack*, 105 Ill. 2d 103, 134-36 (1984), vacated on other grounds, *Mack v. Illinois*, 479 U.S. 1074 (1987)). We agree with the parties that defendant's two convictions for armed robbery were based on the same physical taking of property and, therefore, his conviction for armed robbery under count 4 must be vacated. See *id.*; *Coats*, 2018 IL 121926, ¶12.

¶ 28    Third, in order for the aggravated unlawful restraint convictions to stand, in addition to armed robbery and home invasion, there must be a separate act of restraint involved, independent of the physical act underlying the other offenses. See *People v. Daniel*, 2014 IL App (1st) 121171, ¶¶ 51, 55. Where the restraint is inherent in the other offenses, it cannot be viewed as an independent act. See *id.*; see also *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 1, 17-19,

22-23 (vacating aggravated unlawful restraint convictions where restraint was inherent in the armed robbery and ended concurrently with it).

¶ 29     Here, defendant was charged with aggravated unlawful restraint of Jackson (count 6) and Weakly (count 7). The evidence at trial did not show an act of restraint separate from defendant's remaining conviction for armed robbery under count 3 for taking property from the presence of Jackson. The restraint in this case began and ended with the armed robbery and could not be viewed as an independent act. See *McWilliams*, 2015 IL App (1st) 130913, ¶ 18; *Daniel*, 2014 IL App (1st) 121171, ¶ 55.

¶ 30     However, this court has found separate convictions for unlawful restraint based on one act to be proper where there are multiple victims. *See People v. Lee*, 376 Ill. App. 3d 951, 957 (1st Dist. 2007); see also *Daniel*, 2014 IL App (1st) 121171, ¶¶ 49, 52 (discussing *Lee*). In *Lee*, the defendant approached a family (a father and mother with their son), displayed a gun and demanded money, which the father gave him. 376 Ill. App. 3d at 953. Defendant then left. *Id.* Defendant was convicted of one count of armed robbery and three counts of aggravated unlawful restraint, pertaining to each of the three victims. *Id.* at 952. On appeal, this court agreed with the defendant that the aggravated unlawful restraint conviction pertaining to the father was carved from the same physical act as the armed robbery conviction and vacated that conviction. *Id.* at 956-57. However, this court refused to vacate the counts of aggravated unlawful restraint pertaining to the mother and child, finding that separate convictions based on one act are proper when there are multiple victims. *Id.*

¶ 31     Similarly, here, defendant was charged with and convicted of aggravated unlawful restraint based on two separate victims, Jackson and Weakly. Defendant's conviction for the

aggravated unlawful restraint of Jackson under count 6 must be vacated, as it was based on the same act as defendant's remaining conviction for armed robbery for taking property from the presence of Jackson. However, under *Lee*, we find that defendant's conviction for the aggravated unlawful restraint of Weakly was proper and because, with vacation of defendant's conviction on count 4 (armed robbery of Weakly), there is no one-act, one-crime issue with defendant's conviction on count 7. Thus, we affirm defendant's conviction and sentence under count 7. See *Lee*, 376 Ill. App. 3d at 957.

¶ 32    Defendant's next argument on appeal is that his sentence of 24-years in prison for armed robbery with a firearm is excessive.

¶ 33    In imposing defendant's sentence, the trial court was required to balance the seriousness of the offense and the objective of restoring defendant to useful citizenship. Ill. Const. 1970, art. I § 11. The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference because the trial court had the opportunity to observe the defendant and the proceedings. *People v. Alexander*, 239 Ill. 2d 205, 212-13 (2010). The trial court is presumed to have considered all factors before it in mitigation and the defendant's rehabilitative potential, and the defendant has the burden of showing the contrary. *People v. Barnes*, 2017 IL App (1st) 143902, ¶95. In reviewing defendant's sentence, this court will not reweigh the sentencing factors, and will not disturb the sentence imposed by the trial court absent an abuse of discretion. *Alexander*, 239 Ill. 2d at 213, 214. A sentence constitutes an abuse of discretion where it is greatly at variance with the spirit and purpose of the law. *Id.* at 212.

¶ 34    Armed robbery with a firearm is a Class X felony with a sentencing range of 6 to 30 years in prison with a 15-year mandatory sentencing enhancement. 720 ILCS 5/18-2(a)(2), (b) (West

2014); 730 ILCS 5/5-4.5-25(a) (West 2014). Thus, the sentencing range defendant faced was 21 to 45 years in prison. *Id.* A sentence that is within the statutory range is presumed proper. *People v. Brown*, 2015 IL App (1st) 130048, ¶ 42. Defendant's sentence of 24 years in prison was within and at the lower end of the statutory range and, therefore, is presumptively proper. See *id.* To rebut this presumption, defendant must show that his sentence greatly varied with the purpose and spirit of the law. *Alexander*, 239 Ill. 2d at 212-13.

¶ 35    In this court, defendant does not dispute that his sentence fell within the permissible statutory range. Rather, he argues that his 24-year sentence is disproportionate to the nature of the offense and should be reduced to the minimum term of 21-years in prison because: of his limited participation in the offense; of his lack of prior convictions for violent offenses; of his significant rehabilitative potential; he was not personally armed; and no one was physically harmed during the offense.

¶ 36    Here, the record shows that, in imposing defendant's 24-year sentence, the trial court stated that it considered the PSI, arguments in aggravation and mitigation, and the required statutory factors. The PSI showed that defendant had earned his GED and, as defense counsel also pointed out, defendant did not have any prior convictions for violent offenses. Defense counsel further argued that, except for on the federal conviction, defendant had only been sentenced to probation, and he had been employed full-time for several years. Defendant has close family ties, and he told the court of his community involvement and desire to be with his child. Thus, the record demonstrates that the trial court considered defendant's background and rehabilitative potential when imposing defendant's sentence.

¶ 37    The record also shows that the trial court was aware of the nature of the offense and was aware of defendant's involvement in it. At trial, the court specifically asked Jackson if defendant had a weapon and if he sat in the chair from the time he came into the apartment until he left. In imposing sentence, the court noted that there was a domestic situation preceding the offense, upon which an argument for leniency could be based. The court further stated that there were "two young teenage girls along with a child in the house when both the defendants came in the house, the [co]defendant James being armed, I consider these to be very serious matters." Thus, the record here shows that the court was aware of the nature of the offense and defendant's participation in it, as well as defendant's background and rehabilitative potential. "Moreover, '[a] defendant's rehabilitative potential *** is not entitled to greater weight than the seriousness of the offense.' " *Alexander*, 239 Ill. 2d at 214 (quoting *People v. Coleman*, 166 Ill. 2d 247, 261 (1995)).

¶ 38    Given this record, defendant cannot sustain his burden of showing that the trial court failed to consider all factors before it in mitigation. See *People v. Barnes*, 2017 IL App (1st) 143902, ¶ 95. Defendant essentially asks us to reweigh the sentencing factors and substitute our judgment for that of the trial court, which we cannot do. See *Alexander*, 239 Ill. 2d at 213, 214-15. We cannot say that the trial court abused its discretion in imposing defendant's 24-year sentence, a term 3 years above the minimum and 21 years below the maximum sentence for armed robbery with a firearm.

¶ 39    In sum, one of defendant's convictions for home invasion with a firearm (count 2), one of his convictions for armed robbery with a firearm (count 4), and one of his convictions for aggravated unlawful restraint (count 6) are vacated. We direct the clerk of the circuit court to amend the mittimus to reflect these modifications. Ill. S. Ct. R. 615(b) (eff. Jan. 1, 1967); see, *e.g.,*

*People v. Walker*, 2011 IL App (1st) 072889, ¶ 40 (stating the appellate court has the authority to directly order the clerk of the circuit court to make necessary corrections to defendant's sentencing order). Defendant's remaining convictions and concurrent sentences for home invasion with a firearm (count 1), armed robbery with a firearm (count 3), and aggravated unlawful restraint (count 7) are affirmed.

¶ 40    Affirmed in part, vacated in part, mittimus corrected.