NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250718-U

NO. 4-25-0718

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 19, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| ALLEN BROWN JR., | ) | No. 11CF1145 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John Casey Costigan, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not err by denying defendant's motion for leave to file a successive postconviction petition where defendant failed to establish cause and prejudice.

¶ 2   Defendant, Allen Brown Jr., appeals the trial court's denial of his *pro se* motion for leave to file a successive postconviction petition. Defendant argues that he established cause and prejudice with regard to his claim that his two convictions for armed robbery violated the one-act, one-crime rule. We affirm.

¶ 3                I. BACKGROUND

¶ 4   In 2011, defendant was charged with two counts of armed robbery (720 ILCS 5/18-2(a)(2) (West 2010)) in that, while armed with a firearm, he took property (namely, United States currency) by use of force or the threat of imminent use of force from the presence of Ashley Bennett and Brandi Gordon, respectively. He was also charged with aggravated battery

(*id.* § 12-3.05(f)(1)).

¶ 5        In 2012, a jury found him guilty of all three counts. The trial evidence showed that defendant and Keisean Ellis robbed a Casey's General Store (Casey's) in 2011. Bennett and Gordon were working there at the time of the incident, and one cash register had been assigned to each of them. Bennett testified that two men wearing ski masks entered the store on the night of the incident. One was carrying a gun, and one was carrying an object that appeared to be a tire iron. The man carrying a gun hit her in the face with the gun, injuring her face. Bennett opened her cash register and put all the money from the register into a bag the man with the gun had brought with him. Gordon then opened her cash register and gave the man the money from that register. After that, the man with the gun walked behind the counter and took two cartons of cigarettes from the shelf. He asked if there was a safe, and Bennett told him there was. She unlocked the safe, and the man removed several "money bags" from it. The men left, and Gordon called the police. Later that evening, an officer apprehended defendant and Ellis during a traffic stop. Officers located in their vehicle National City money bags, a lot of loose change, several cartons of cigarettes, and a firearm. Gordon later identified defendant and Ellis as the robbers during a show-up based on their clothing.

¶ 6        The trial court sentenced defendant to 35 years' imprisonment on each count of armed robbery and 10 years' imprisonment for aggravated battery. The court ordered that all three sentences were to run consecutively and that defendant was to serve 85% of the sentences. During the sentencing hearing, the court stated:

           "The defendant was found guilty of two counts of armed robbery, and

           neither counsel really addressed this point, but I want to just mention it for the

           record. The court believes that the two counts of armed robbery in this case are

- 2 -

based on two separate physical acts. While they were conducted or committed one right after the other, one of the armed robberies was from one clerk and one was from another, they were from different cash registers. The defendant had to essentially engage in different physical acts to conduct each of the arm[ed] robberies, so, therefore, the court is of the opinion that each of these armed robberies are separate criminal offenses. They are not confined by the one act, one crime rule, and, therefore, the court shall be imposing sentences on both Counts One and Two for that reason."

¶ 7        On direct appeal, defendant argued that (1) the trial court violated his constitutional right to self-representation, (2) the State failed to prove him guilty beyond a reasonable doubt of armed robbery, (3) the sentences for armed robbery violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), (4) his conviction and sentence for aggravated battery violated the one-act, one-crime doctrine, (5) the court erred by imposing an extended-term sentence for aggravated battery, and (6) the 80-year aggregate sentence was excessive. *People v. Brown*, 2015 IL App (4th) 130192-U, ¶ 3. We found that the trial court erred by imposing an extended-term sentence for aggravated battery and reduced the sentence on that count to five years' imprisonment. *Id.* ¶ 84. We otherwise affirmed the judgment of the trial court. *Id.* ¶ 98.

¶ 8        On September 15, 2016, defendant, *pro se*, filed a postconviction petition asserting that his constitutional rights were violated where the trial court denied his requests to represent himself without admonishment, failed to hear and rule on trial counsel's motion to withdraw, and failed to make an appropriate ruling after a court-appointed psychiatrist filed his first report on the issue of fitness. Defendant also argued that trial counsel provided ineffective assistance by failing to fully investigate a defense of insanity or guilty but mentally ill, obtaining

incomplete mental health records from defendant's mother "to be relied on for a fitness/insanity assessment," failing to allow defendant to review "tangible evidence" after defendant requested to do so, failing to interview witnesses, failing to call character witnesses, and refusing to relay defendant's request to plead guilty but mentally ill and instead forcing him to present a fraudulent alibi defense. Defendant also asserted that the prosecutor unlawfully restrained him and kidnapped him by directing jail officials to shackle him to a wheelchair to bring him to court.

¶ 9 The trial court dismissed the *pro se* postconviction petition on the basis that it was frivolous and patently without merit, and this court affirmed the summary dismissal. *People v. Brown*, 2019 IL App (4th) 160941-U, ¶ 34.

¶ 10 On July 26, 2024, defendant, *pro se*, filed a motion for leave to file a successive postconviction petition, which is the subject of the instant appeal. Defendant sought to raise, *inter alia*, a claim that the trial court erred by failing to vacate one of his armed robbery convictions under the one-act, one-crime doctrine because he only took property belonging to Casey's rather than property belonging to either of the two victims personally. Defendant also asserted that "counsel was ineffective for not raising these issues previously." Defendant asserted that cause existed for failing to raise this claim in his initial postconviction petition because (1) he was a layperson who had only recently discovered the authorities upon which he relied and (2) he had been diagnosed with "a serious mental illness and functional impairment with [his] mood and thought process." He asserted:

> "The legal process makes me suicidal and I try and kill myself alot because I am
> easily overwhelmed and deeply affected by my legal struggles. Hopeless. I have
> been diagnosed and housed in a mental health residential treatment unit within
> [the Illinois Department of Corrections] continuously since [2012] ***. I am

- 4 -

constantly in and out of the hospital for self harm and suicide attempts, and I

spend a great deal of time in crisis level of care where my property is restricted to

just a blanket and safety smock.”

Defendant also asserted that the one-act, one-crime claim so infected the judgment that his

sentence violated due process and the constitution.

¶ 11         On March 12, 2025, the trial court entered an order denying defendant's motion

for leave to file a successive postconviction petition, finding he had failed to show cause and

prejudice. This appeal followed.

¶ 12                              II. ANALYSIS

¶ 13         On appeal, defendant argues that the trial court erred by denying his motion for

leave to file a successive postconviction petition. He contends that he established cause for

failing to file his successive postconviction petition by alleging that his serious mental illness,

hospitalizations, lack of access to his records, and suicide attempts impeded his ability to raise

his one-act, one-crime claim in his initial postconviction petition. He also argues that he

established prejudice because his two convictions for armed robbery violated the one-act,

one-crime rule.

¶ 14         Section 122-1(f) of the Post-Conviction Hearing Act(725 ILCS 5/122-1(f) (West

2024)) provides:

> “Only one petition may be filed by a petitioner under this Article without leave of
>
> the court. Leave of court may be granted only if a petitioner demonstrates cause
>
> for his or her failure to bring the claim in his or her initial post-conviction
>
> proceedings and prejudice results from that failure. For purposes of this
>
> subsection (f): (1) a prisoner shows cause by identifying an objective factor that

impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process."

¶ 15　A motion for leave to file a successive petition satisfies the cause and prejudice test if it "adequately alleges facts demonstrating cause and prejudice." *People v. Smith*, 2014 IL 115946, ¶ 34. That is, "the court must determine whether [the] defendant has made a *prima facie* showing of cause and prejudice." *People v. Bailey*, 2017 IL 121450, ¶ 24. However, a defendant must "submit enough in the way of documentation to allow a circuit court to make that determination." (Internal quotation marks omitted.) *Smith*, 2014 IL 115946, ¶ 35.

"[L]eave of court to file a successive postconviction petition should be denied when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Id.*

¶ 16　A trial court's assessment of cause and prejudice is reviewed *de novo*. *People v. Clark*, 2023 IL 127273, ¶ 47.

¶ 17　　　　　　　　　　　　A. Cause

¶ 18　Defendant argues he has established cause for failing to raise his one-act, one-crime claim in his initial postconviction petition because he alleged that he had been diagnosed with a "serious mental illness that causes functional impairment to his mood and thought process," legal proceedings overwhelmed him and made him suicidal, and he had been housed in a specialized unit for mentally ill offenders since 2012. Defendant also alleged that he

spent extended periods in crisis care, where he was restricted to a blanket and "safety smock." Defendant argues that the record—including the presentence investigation report (PSI), an Indiana order indicating he suffered from a mental condition, and a fitness evaluation report authored by a psychiatrist—supported his allegations that he suffered from mental health disorders.

¶ 19 To establish cause, a defendant must show that some objective factor external to the defense impeded his ability to raise the one-act, one-crime claim in an earlier proceeding. *Id.* ¶ 60. A defendant's subjective ignorance of the law does not constitute "cause" for purposes of the cause and prejudice test. *People v. Evans*, 2013 IL 113471, ¶ 13.

¶ 20 We find the allegations in defendant's motion for leave to file his successive postconviction petition were insufficient to establish cause for failing to raise his one-act, one-crime claim in his initial postconviction petition. Defendant failed to attach any documentation to his petition concerning the nature of his mental illness, and his allegations concerning the nature of his mental illness and the manner in which it prevented him from raising his claim earlier were vague. While defendant alleged that he had been in a "crisis level of care" with property restrictions for "a great deal of time," defendant did not specify when and for how long his property was restricted. Significantly, defendant was able to file an initial postconviction petition in 2016 raising numerous claims, despite his mental health issues, and he did not explain in his motion for leave to file a successive postconviction petition how his mental illness prevented him from raising the one-act, one-crime claim in the initial petition. See *People v. Maclin*, 2021 IL App (1st) 172254, ¶ 15 ("In the absence of specific and objective information as to the nature of his mental illness during the relevant time period that would have prevented him from raising this claim in an earlier proceeding, we cannot conclude that the defendant has

shown cause.").

¶ 21        While defendant argues that the trial record supports his claim that he suffered from a serious mental illness, we note that the record is not entirely clear on this matter. There is evidence in the record that defendant has been diagnosed with mental illnesses, but the nature and severity of defendant's mental health issues is unclear. For example, the psychiatrist who conducted a fitness evaluation prior to the trial concluded that there was "a lot of reason to believe that [defendant was] not psychotic but [was] malingering psychosis in order to avoid consequences for his actions." Similarly, according to the PSI, records indicated that defendant was "manipulative in some of his suicidal gestures" in jail, as he wanted to be housed in certain areas of the jail or alone.

¶ 22                                    B. Prejudice

¶ 23        Even if we were to find defendant established cause for failing to raise his one-act, one-crime claim in his initial postconviction petition, defendant has not shown prejudice. To show prejudice, defendant was required to show that the one-act, one-crime claim "so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2024).

¶ 24        Under the one-act, one-crime rule, "a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act." *People v. Coats*, 2018 IL 121926, ¶ 11. In determining whether a one-act, one-crime violation occurred, courts first consider whether the defendant's conduct consisted of a single physical act or separate acts. *Id.* ¶ 12. If the defendant committed multiple acts, the court then considers whether any of the offenses are lesser-included offenses. *Id.* "[A]n 'act' [is] any overt or outward manifestation that will support a separate offense." *People v. Crespo*, 203 Ill. 2d 335, 341

(2001).

¶ 25 The offense of armed robbery, as charged in this case, required the State to prove that defendant knowingly took property from the person or presence of another by the use of force or threatening the imminent use of force while armed with a firearm. 720 ILCS 5/18-2(a)(2) (West 2012). "The ownership of the property taken is unimportant; its possession by the victim is adequate for the purpose of establishing the crime [of armed robbery]." *People v. Scott*, 23 Ill. App. 3d 956, 967 (1974). "Under well-settled Illinois law, multiple armed robbery convictions cannot lie when there is a single taking of property, even when multiple individuals are present and threatened." *People v. Scott*, 2015 IL App (1st) 133180, ¶ 16.

¶ 26 Here, defendant argues that his convictions for two counts of armed robbery violated the one-act, one-crime rule. He asserts the evidence showed that there was only one taking of property belonging to the store during a single continuous act. Defendant contends that the fact that there were two cash registers assigned to two different employees did not create two distinct takings, as the robbery was one continuous criminal episode directed at the store.

¶ 27 In support of his argument, defendant relies on *People v. Mack*, 105 Ill. 2d 103 (1984) (vacated on other grounds, 479 U.S. 1074 (1987)). In *Mack*, the defendant was convicted of two counts of armed robbery for taking money from the person and presence of a bank's security guard and loan officer. *Id.* at 134. The trial evidence showed that the defendant shot the security guard twice and ordered the loan officer to sit on the floor while brandishing a weapon. *Id.* The defendant's accomplices then "jumped over the partitions of the teller's [*sic*] cages and scooped up the money." *Id.* at 135. The *Mack* court held that the defendant should have only been convicted of one count of armed robbery because "there was but one taking of money." *Id.* at 136. The *Mack* court found that the case was distinguishable from cases involving multiple

takings from multiple victims, where multiple convictions of armed robbery were proper. *Id.* at 135.

¶ 28        Though not cited by the parties, we find the decision in *People v. Waldron*, 219 Ill. App. 3d 1017 (1991), to be instructive. In *Waldron*, the defendant was convicted of first degree murder and two counts of armed robbery for an incident during which he shot an individual while robbing a gas station. *Id.* at 1029. On appeal, the defendant argued, *inter alia*, that one of his armed robbery convictions must be vacated because the evidence showed there was only one taking of property. *Id.* at 1042. The court disagreed, finding that evidence had been presented at the trial indicating that the defendant had ordered a gas station employee to give him money and the employee emptied a cash register. *Id.* at 1043. The defendant then shot the employee and told a different employee to give him the rest of the money, which he did. *Id.* The *Waldron* court found these facts supported the finding that two separate armed robberies occurred, noting the offense of armed robbery is complete when force or threat of force causes the victim to part with possession or custody of property against his will. *Id.* The *Waldron* court distinguished *Mack*, finding that, unlike in *Mack*, multiple takings had occurred. *Id.* at 1044.

¶ 29        In the instant case, like in *Waldron*, the evidence showed that multiple takings occurred. Specifically, the evidence showed that defendant threatened both Bennett and Gordon with a gun and struck Bennett in the face with the gun. At defendant's direction, Bennett emptied one cash register and put the money in a bag, and Gordon then emptied the second cash register. Although all the property taken by defendant was owned by Casey's, defendant threatened both Bennett and Gordan and separately took property from the possession of each of them.

¶ 30        Because there were two separate takings in this case, it is distinguishable from *Mack*. While the *Mack* court noted that money was taken from multiple tellers' cages and that all

- 10 -

the money taken was property of the bank, it appears, based on the *Mack* court's description of the offense, that both the loan officer and the security guard were merely present in the room while the defendant's accomplices took money from the tellers' cages. See *Mack*, 105 Ill. 2d at 134-36. There was no indication in that case that the defendant or his accomplices separately directed the loan officer to turn over some money and the security guard to turned over additional money, as occurred in the instant case and in *Waldron*.

¶ 31       Based on the foregoing, we find the trial evidence showed that defendant's two armed robbery convictions were based on separate physical acts. As armed robbery is not a lesser-included offense of itself, defendant's one-act, one-crime claim fails. See *Coats*, 2018 IL 121926, ¶ 12. Accordingly, the trial court did not err by finding defendant had failed to establish prejudice with respect to his failure to raise the one-act, one-crime claim earlier.

¶ 32                                    III. CONCLUSION

¶ 33       For the reasons stated, we affirm the trial court's judgment.

¶ 34       Affirmed.