2024 IL App (1st) 220253-U

No. 1-22-0253

Order filed May 31, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 3981 |
| | ) | |
| RAUL REVELES, | ) | Honorable |
| | ) | Adrienne E. Davis, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Mitchell and Justice Mikva concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The judgment of the circuit court is affirmed where (1) defendant's convictions for home invasion and residential burglary did not violate the one-act, one-crime rule, and (2) his 23-year prison sentence for home invasion was not excessive.

¶ 2   Following a bench trial, defendant-appellant Raul Reveles was convicted of home invasion, residential burglary, aggravated domestic battery, and child abduction, then sentenced to 23 years' imprisonment. On appeal, Mr. Reveles contends that the trial court committed plain error where (1) his conviction for residential burglary violates the one-act, one-crime rule as it was based on

the same physical act as his home invasion conviction, and (2) his prison sentence of 23 years for home invasion is excessive. For the following reasons, we affirm Mr. Reveles's conviction and sentence.

¶ 3                                    BACKGROUND

¶ 4      Mr. Reveles was charged with one count of home invasion, two counts of residential burglary, three counts of aggravated domestic battery, and one count of child abduction. As Mr. Reveles does not challenge the sufficiency of the evidence, we set forth only the facts relevant to the issues on appeal.

¶ 5      At trial, Ana Susana Rocio Barron testified that she and Mr. Reveles had a child together, Raulito, and had an arrangement for Mr. Reveles' regular visitation with their son. On the morning of January 31, 2019, Ms. Barron dropped Raulito off at Mr. Reveles' home. She did not allow Mr. Reveles into her home because he "wanted to hit [her] in front of the children during Christmas." That evening, Mr. Reveles came to Ms. Barron's home with Raulito. When she opened her front door and let Raulito in, she did not invite Mr. Reveles in, and he stayed outside at first. Then, he blocked the door with his foot so Ms. Barron could not close it. Despite Ms. Barron's efforts to push him out of the doorway, he entered her home.

¶ 6      Once inside, Mr. Reveles grabbed Ms. Barron by the throat, squeezing so she could not breathe or cry out. He then threw her down. Raulito was a "foot" away as this happened. Mr. Reveles grabbed Ms. Barron by the hair and punched her face, neck, chest, and stomach. He kicked her stomach multiple times, exclaiming that he heard she was pregnant and asking for the father's identity. She was not pregnant, but she posted an ultrasound image of Raulito online the day before the incident. When Mr. Reveles realized Ms. Barron was on the phone with her friend Xochithl

Herrera, he took her cellphone, ended the call, and put her phone in his pocket. He left Ms. Barron's home with Raulito and pushed Ms. Barron to the ground when she ran after them. He then sent Ms. Herrera text messages demanding, in exchange for Raulito's return, $500, a ring, shoes, and a letter stating that Ms. Barron would not bring charges against him. Ms. Herrera came to Ms. Barron's home and left with the letter, money, a pair of Ms. Barron's old shoes, and one of her rings. She later returned with Raulito.

¶ 7     Ms. Barron testified that she still had a numb nerve near her left eye and a broken nose from Mr. Reveles' punches. She identified photographs of injuries to her face, neck, and chest taken on the night in question, which were entered into evidence. On cross-examination, Ms. Barron denied fighting with Claudia Reveles, defendant's sister, on January 30, 2019.

¶ 8     Ms. Herrera testified that on the night of January 31, 2019, she was on the telephone with Ms. Barron. During the call, she heard Mr. Reveles' voice, Ms. Barron screaming for Mr. Reveles to leave, and Ms. Barron asking her to call the police. Mr. Reveles later brought Ms. Barron's cellphone to Ms. Herrera, claiming he took Raulito because Ms. Barron's home smelled like marijuana, and she was drunk. She then went to Ms. Barron's home and saw deep bruises on her face and neck and blood on her shirt that had not been there that morning. Mr. Reveles and Ms. Herrera texted about returning Raulito. Mr. Reveles demanded $500, a watch, shoes, and a letter stating Ms. Barron would not bring charges against him. Ms. Herrera delivered those items to him, who returned Raulito to her.

¶ 9     Chicago police officer Ottadio Granados testified that, on the evening in question, he met with Ms. Barron, who was still bleeding, and saw fresh injuries to her face and neck and a blood stain on her shirt. Officer Granados did not smell alcohol or marijuana on Ms. Barron or in her

home, and she did not seem to be drunk or high. Ms. Herrera came to Ms. Barron's home, and Officer Granados spoke to Mr. Reveles on Ms. Herrera's phone. Officer Granados asked him to return Raulito, but he refused. Officer Granados identified his body-camera video, and it was admitted into evidence and published.

¶ 10     Mr. Reveles testified that when he brought Raulito to Ms. Barron's home, she "was drunk, and the house smelled like weed." He left with Raulito and took Ms. Barron's phone by accident. He denied striking her or entering her residence.

¶ 11     The trial court found Mr. Reveles guilty of one count of home invasion, one count of residential burglary predicated on intent to commit aggravated domestic battery, two counts of aggravated domestic battery, and one count of child abduction. Noting it had viewed photographs and videos of Ms. Barron, the court found Ms. Barron credible and that her injuries appeared fresh rather than a day old. The court found Mr. Reveles not guilty of residential burglary based on intent to commit child abduction, and of aggravated domestic battery based on permanent disfigurement.[1]

¶ 12     The presentencing investigation report (PSI) stated that Mr. Reveles, born in 1979, had five convictions from 2001 to 2012 for driving without a valid license. He did not graduate high school, and he worked as a cook at the time of this arrest. He reported close relationships and regular contact with his family, and he was "satisfied with the strong support that he receives from those

_____

[1] The court stated that it found defendant not guilty of aggravated domestic battery based on permanent disfigurement, count VI of the indictment. However, the common law record consistently states that defendant was found guilty, and later sentenced, on count VI and was found not guilty of aggravated domestic battery on count V. We presume the court intended to find defendant not guilty of count VI and guilty of count V. See *People v. Willenborg*, 2023 IL App (5th) 230727, ¶ 18 (when the court's oral pronouncement and written order conflict, the oral pronouncement controls).

closest to him." He was never married, had five children ages 7 to 19, and was in contact with three of his children. He attended church and claimed eight close friends who had no criminal histories or substance abuse. He reported good health, except for a knee injury treated with medication, and no mental health issues. He admitted to using cocaine once and denied drinking alcohol except once.

¶ 13     At sentencing, the State tendered a victim impact statement to the trial court, which defense counsel acknowledged receiving; it was not read into the record and there is no copy in the record on appeal. The State argued for a finding of great bodily harm because Ms. Barron had a numb nerve and broken nose. Defense counsel argued that Mr. Reveles had no convictions for violence, only vehicular offenses, and asked for the minimum sentence. When invited to address the court, Mr. Reveles said that it was "sending me to prison for something that I didn't do."

¶ 14     The court stated that it "heard all of the evidence at trial and mitigation and aggravation at sentencing," and Mr. Reveles's statements. It then sentenced Mr. Reveles to concurrent prison terms of 23 years for home invasion, 10 years for residential burglary, 5 years for each aggravated domestic battery count, and 2 years for child abduction. The court found insufficient evidence of severe bodily injury or great bodily harm for purposes of the home invasion conviction.

¶ 15                              ANALYSIS

¶ 16     We note that we have jurisdiction to consider this matter, as Mr. Reveles filed a timely notice of appeal. See Ill. S. Ct. R. 606 (eff. July 1, 2017); see also *People v. English*, 2023 IL 128077, ¶ 25. On appeal, Mr. Reveles contends that (1) his residential burglary conviction violates the one-act, one-crime rule because it was based on the same physical act as his home invasion conviction; and (2) his 23-year sentence is excessive.

¶ 17 As a threshold matter, Mr. Reveles acknowledges that he did not file or orally raise a motion to reconsider his sentence. He also failed to raise his claim of a one-act, one-crime violation before the trial court. However, he argues that we may review both of his claims under the plain error doctrine. The plain error doctrine allows consideration of unpreserved, and thus forfeited, sentencing claims when a clear or obvious error occurred and either (1) the evidence was so closely balanced that the error alone threatened to tip the scales of justice against the defendant, or (2) the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. *People v. Coats*, 2018 IL 121926, ¶ 9. We will first address Mr. Reveles' one-act, one-crime claim.

¶ 18 Mr. Reveles argues that his conviction for residential burglary is predicated on the same unauthorized entry underlying the conviction for home invasion. He maintains that "not only does the offense of residential burglary share the common act of unlawful entry with the offense of home invasion, there is no additional act that can support a separate offense because the act of beating and striking Barron is already attributed to the aggravated domestic battery conviction." We disagree.

¶ 19 One-act, one-crime claims fall under the second prong of plain error and may be considered despite forfeiture. *Id.* ¶ 10. The one-act, one-crime rule provides that a criminal defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act. *Id.* ¶ 11. A reviewing court first ascertains whether the defendant's conduct consisted of a single physical act or separate acts. *Id.* ¶ 12. If the defendant committed multiple acts, the court then determines whether any of the offenses are lesser-included offenses; if not, multiple convictions are proper. *Id.* Under the one-act, one-crime rule, a defendant can be guilty of two

offenses when a common act is part of both offenses, or part of one offense and the only act of the other offense, so long as there is an additional act that can support a separate offense. *Id.* ¶¶ 15, 26. Whether the one-act, one-crime rule has been violated is a question of law reviewed *de novo*. *Id.* ¶ 12.

¶ 20 The count for home invasion alleged that Mr. Reveles knowingly entered Ms. Barron's dwelling and intentionally injured her by striking, beating, and kicking her face and body. The count for residential burglary of which Mr. Reveles was convicted alleged that he knowingly entered Ms. Barron's dwelling with the intent to commit therein the felony of aggravated domestic battery. Mr. Reveles has two aggravated domestic battery convictions, one for striking, beating, and kicking Ms. Barron and one for strangling her. Thus, residential burglary may be based on strangulation, a separate and distinct physical act from striking, beating, or kicking as in the home invasion count.[2] Therefore, we find that multiple distinct acts support Mr. Reveles' home invasion and residential burglary convictions.

¶ 21 As Mr. Reveles' conduct did not consist of a single physical act, we proceed to the next step of our analysis, determining whether any of the offenses are lesser-included offenses. When deciding whether an offense is a lesser-included offense, we use the abstract elements approach, comparing the statutory elements of the two offenses. *People v. King*, 2017 IL App (1st) 142297, ¶ 25. If all the elements of one offense are included in the second offense and the first offense

---

[2] Defendant argues in his reply brief that the act of strangling Barron is "already attributed" to one of his aggravated battery convictions. As noted, however, a defendant can be guilty of two offenses when a common act is part of both offenses, or part of one offense and the only act of the other offense if an additional act supports a separate offense. *Coats*, 2018 IL 121926, ¶¶ 15, 26.

contains no element that the second offense lacks, the first offense is a lesser included offense of the second. *Id.*

¶ 22    To commit the offense of residential burglary, a person must knowingly and without authority enter or knowingly and without authority remain within the dwelling place of another, with the intent to commit therein a felony. 720 ILCS 5/19-3(a) (West 2012). A person commits the offense of home invasion when, without authority he, not being a peace officer, knowingly enters the dwelling place of another when he knows or has reason to know that one or more persons is present and intentionally causes any injury, other than by discharge of a firearm, to any person or persons within the dwelling place. 720 ILCS 5/19-6(a)(2) (West 2012).

¶ 23    Residential burglary is not a lesser included offense of home invasion because it has an element that home invasion does not: the intent at the time of the unauthorized entry to commit a felony or theft on the premises. *King*, 2017 IL App (1st) 142297, ¶¶ 28-30. We, therefore, conclude that Mr. Reveles' home invasion and residential burglary convictions do not violate the one-act, one-crime rule. Accordingly, because we find no error, there is no plain error (*Coats*, 2018 IL 121926, ¶ 32) and we hold that his residential burglary conviction stands.

¶ 24    Mr. Reveles next contends that his 23-year prison sentence for home invasion is excessive because the trial court failed to appropriately balance the mitigating and aggravating evidence. Again, Mr. Reveles acknowledges that he failed to preserve this issue for review by raising it in the trial court but contends that we may nonetheless review his excessive sentence claim as plain error. As discussed above, we can consider an unpreserved claim if the error is clear or obvious and (1) the evidence was so closely balanced that the error alone threatened to tip the scales of justice against the defendant, or (2) the error is so serious that it affected the fairness of the

proceedings and challenged the integrity of the judicial process. *Coats*, 2018 IL 121926, ¶ 9. Before considering whether there was plain error, we first must determine whether there was error, as a "defendant cannot obtain relief on an unpreserved error under the plain-error doctrine, if he would not have been entitled to relief on the same error if preserved." *People v. Williams*, 2022 IL 126918, ¶ 49.

¶ 25    The trial court has broad discretion in imposing a sentence, and its decision is entitled to great deference. *People v. Webster*, 2023 IL 128428, ¶ 29. There is a strong presumption that the court based its sentencing decision on proper legal reasoning, and we must consider the record as a whole rather than focusing on isolated portions. *People v. Garcia*, 2023 IL App (1st) 172005, ¶ 67; *People v. Jeffers*, 2022 IL App (2d) 210236, ¶ 24.

¶ 26    The trial court observed the defendant and the proceedings and is in a superior position to consider factors such as the defendant's credibility, demeanor, character, mentality, environment, habits, and age. *Id.* We may not modify a sentence absent an abuse of discretion, which we will find only if the sentence is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Id.* ¶¶ 21, 32. "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. This constitutional mandate is to balance the retributive and rehabilitative purposes of punishment. *People v. Elizondo*, 2021 IL App (1st) 161699, ¶ 113. A sentence within the statutory range is excessive only if it was imposed without regard for the defendant's rehabilitative potential. *People v. Elliott*, 2022 IL App (1st) 192294, ¶ 58.

¶ 27    The trial court is presumed to have considered any evidence in mitigation placed before it. *Garcia*, 2023 IL App (1st) 172005, ¶ 67. However, a defendant's rehabilitative potential is not

entitled to greater weight than the seriousness of the offense. *People v. Alexander*, 239 Ill. 2d 205, 214 (2010). The sentence for the Class X felony of home invasion is 6 to 30 years' imprisonment. 720 ILCS 5/19-6(c) (West 2018); 730 ILCS 5/5-4.5-25(a) (West 2018). A sentence within the statutory range is presumed proper. *Webster*, 2023 IL 128428, ¶ 21. Mr. Reveles does not dispute that his home invasion sentence was within the applicable sentencing range. Rather, he contends that his sentence was excessive where he presented mitigation including his "lack of any serious criminal history and strong network of social and familial support."

¶ 28    Mr. Reveles' PSI reflected that he only had prior convictions for vehicular offenses, worked as a cook, had close relationships with family and friends, and had contact with three of his five children. The trial court is presumed to have considered any evidence in mitigation placed before it. *Garcia*, 2023 IL App (1st) 172005, ¶ 67. In imposing sentence, this court expressly stated that it considered the aggravating and mitigating factors. It also noted that Mr. Reveles' spoke in allocution, and nothing in the record suggests that the court penalized defendant for maintaining his innocence.

¶ 29    Mr. Reveles also argues that "there was very little, if any, additional aggravation evidence presented and strong support for [his] rehabilitative potential." However, the record refutes his characterization of the evidence presented. First, the State presented the court with a victim impact statement, which Mr. Reveles' briefs do not acknowledge. In the absence of the statement itself from the record and any discussion of the statement in the court's sentencing findings, we mention the victim impact statement only to show that there was in fact "additional aggravation evidence presented."

¶ 30    The second and most vital refutation of Mr. Reveles' characterization of the trial evidence is the seriousness of his conduct. *People v. Kendrick*, 2023 IL App (3d) 200127, ¶ 50; *Elizondo*, 2021 IL App (1st) 161699, ¶ 113 (seriousness of the offense is the most important factor in determining an appropriate sentence); see also *Alexander*, 239 Ill. 2d at 214; *Garcia*, 2023 IL App (1st) 172005, ¶ 67 (a defendant's rehabilitative potential is not entitled to greater weight than the seriousness of the offense).

¶ 31    Here, Mr. Reveles came to Ms. Barron's home where, due to a past threat of violence, he was not welcome. He entered her home despite her efforts to keep him out. While their son was nearby, Mr. Reveles choked Ms. Barron to the point that she lost her breath. He struck her repeatedly in the face and chest, leaving her with an injured nose and a numb nerve near her left eye. He kicked her repeatedly in the stomach. He then shoved her to the ground as he left with their son. Later he demanded payment and assurance that Ms. Barron would not press charges, for Raulito's return.

¶ 32    Taking the record as a whole, we find the trial court's sentence was a reasonable exercise of its discretion. The court did not impose the sentence without regard for Mr. Reveles' rehabilitative potential. Though Mr. Reveles argues that the court did not give proper weight to his presented mitigation, he is essentially asking us to substitute our judgment for that of the trial court. This we cannot do. See *Alexander*, 239 Ill. 2d at 213 (reviewing court cannot substitute its sentencing judgment for that of the trial court merely because it would have weighed the aggravating and mitigating factors differently).

¶ 33    As such, we do not find that Mr. Reveles' sentence was manifestly disproportionate to his offenses. Therefore, we do not find plain error. *Williams*, 2022 IL 126918, ¶ 49. Because we find

that no error occurred, we must honor Mr. Reveles' forfeiture of this issue. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010) (citing *People v. Naylor*, 229 Ill. 2d 584, 593 (2008)). As no error occurred, Mr. Reveles' additional argument that counsel was ineffective for not filing a motion to reconsider sentence also lacks merit. Since the actions complained of did not rise to the level of plain error, the failure of Mr. Reveles' trial counsel to raise those claims did not prejudice him. *People v. Easley*, 192 Ill. 2d 307, 332 (2000).

¶ 34                                  CONCLUSION

¶ 35    Accordingly, the judgment of the circuit court is affirmed.

¶ 36    Affirmed.